[No. 25653. Department One. August 15, 1935.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES H. SMITH, *Appellant*.[1]

[1]Reported in 48 P. (2d) 581.

*Frank L. Cooper* and *Clarence J. Coleman,* for appellant.

*A. W. Swanson* and *G. W. Louttit,* for respondent.

TOLMAN, J.—The appellant, appealing from a judgment and sentence based on a verdict of guilty upon four counts involving his actions as a county commissioner of Snohomish county, assigns as error the giving of a certain instruction, the overruling of his motion for a new trial, and the entry of the judgment against him.

To a clear understanding of the situation, it seems necessary to say that the information upon which appellant was tried charged in four several counts that, while county commissioner, and as such, the appellant unlawfully audited and allowed two payrolls, each containing an item for man and team at six dollars per day, which item was false and fraudulent and known so to be; and also, that the appellant feloniously obtained from Snohomish county sums of money aggregating $138.80 by causing the man to whom the false items upon the payroll were paid by the county, to turn over and deliver to him one-half of the money so obtained, with intent to appropriate and convert the same to his own use and with intent to deprive and defraud the county of money so obtained.

The state introduced abundant evidence tending to show every element of the several offenses charged. The story in simple words is substantially this: While appellant was one of the county commissioners, an old caterpillar tractor was, by the county, traded in on the purchase of a new tractor. The company which thus received title to the old tractor had no immediate use for it and was willing, if the county put it in repair, to let the county use it for a time. The tractor needed new tracks before it could be used. These new tracks

were ordered in the regular way, were billed to the county, and the bill was allowed and paid by the county in the usual course.

Being equipped with the new tracks, under directions from the appellant a man by the name of Roark was employed to operate it and was put at work. Also, under instructions from the appellant, payroll vouchers were made and payrolls made up carrying the item "Bob Roark man and team" at $6 per day for each day the tractor was so operated. Roark, in fact, furnished no team and furnished nothing but his individual services. At once upon receiving from the county the amount shown to be due him by the payrolls, Roark divided and paid over one-half of the amount so received to the appellant. For one of these payments, appellant gave Roark a receipt, indicating that the money was to be used to purchase parts for the caterpillar tractor.

In his defense, appellant admitted freely practically every fact which the state's evidence tended to prove, but asserted that, as the caterpillar tractor did not belong to the county, he thought it best to provide a fund for the purchase of necessary repairs to the tractor by the method which has been indicated; and that the tractor broke down several times on the work, that new parts were bought and paid for by him and placed upon the tractor so that its use might be continued. Appellant also testified that he thus paid out all and more than all of the money which he received from Roark; and, of course, he testified that he acted in entire good faith throughout and without personal profit. Appellant did not call any witness to corroborate his testimony as to the purchase of parts and payment therefor by him.

In rebuttal, the state produced evidence tending to show that the only parts put upon the caterpillar trac-

tor, after it began to operate, were old parts which had been lying about the garage, presumably the county garage, and inferentially, at least, such parts belonged to the county.

With this evidence before the jury, the court gave the following instruction:

"You are instructed as to counts three and four of the information that intent to defraud is an essential element of the crime of grand larceny charged in such counts.

"To justify you in finding the accused guilty of these counts, or either of them, it is required, not only that you be convinced beyond a reasonable doubt that the accused actually obtained the money in the manner as alleged, but in obtaining the same the accused intended to defraud the county of Snohomish and that the money was received with such intent.

"Therefore, if you should believe from the evidence adduced bearing thereon that the accused honestly believed he had a right to receive this money and actually did expend such money for repair of the tractor referred to in the testimony, or for replacement of parts thereon or either of such, or after hearing all the evidence in the case you should have a reasonable doubt as to whether accused did intend to defraud in his dealings with the money, then you must find the accused not guilty, as to those counts three and four."

Appellant attacks the last paragraph of this instruction because, as he asserts, his intent when he obtained the money is the decisive issue, and what he afterwards did or afterwards intended is but evidence of his intent at the vital moment.

We do not entirely disagree with this view, and we think the last part of the instruction is technically erroneous; but, even so, we can see no possible prejudice to the appellant in it.

As before indicated, the appellant freely admitted that he obtained the money in the manner shown by the state and testified that he paid it out for parts at

once. There was no evidence tending to show that the appellant intended to pay but was, by force of circumstances, prevented or delayed in so doing. If the jury believed him at all, there was nothing in the instruction to prevent a verdict in his favor. The instruction but followed his own testimony, and had that been believed, no doubt, he would have been acquitted.

The words of the instruction "and actually did expend such money for repairs," etc., in the light of the evidence before the jury, were helpful to the appellant rather than harmful, and now furnish no legitimate basis for the reversal of the judgment.

The motion for a new trial raises two questions, the first of which has to do with the absence of the appellant from the court room for a short period of time during the trial below.

It appears that counsel for the appellant on the occasion in question said: "Mr. Smith take the stand— No, we will call Roy Starr first." Whereupon, Roy Starr was sworn and asked half a dozen questions, none of which elicited anything of any great materiality, and the whole of Starr's testimony, if it had any value at all, was inferentially beneficial to the appellant. There was no cross-examination of Mr. Starr.

During the moment or two when the witness Starr was on the stand, the appellant, according to his own affidavit, hurried from the court room into an anteroom for the purpose of using the telephone, closing the court room door behind him as he went out. After using the telephone, he stepped into the toilet, and he avers that he heard nothing which went on in the court room during his absence. Whether that absence covered the whole time during which Starr was testifying, does not appear, but, at any rate, the appellant was present to take the witness stand when Starr's examination was completed.

■ The appellant relies upon § 22, Art. I, of our constitution, which accords to one on trial for a criminal offense the right to meet the witnesses against him face to face; and also upon our statute, Rem. Rev. Stat., § 2145 [P. C. § 9372], which, in effect, requires the personal presence of the accused during his trial.

It appears that the appellant was at liberty on bail before and during the trial below, but it is argued that, even so, he could not waive the rights accorded to him by the constitution and the statute. Starr was not a witness against the appellant, so the constitutional provision was in no way violated and need not be further considered.

Conceding an entire lack of ulterior motive on the part of appellant in absenting himself from the court room as he did, yet his counsel were at all times present representing him, the witness being examined was his witness, the evidence given, if material at all, was entirely favorable to him, and if he was technically absent for a moment or two, no prejudice to him resulted. To follow the letter and to disregard the spirit of the statute under such conditions, would tend to defeat and not to promote justice.

We have not heretofore passed upon exactly such a question, but the argument used and the authorities cited in the case of *State ex rel. Gabe v. Main,* 66 Wash. 381, 119 Pac. 844, tend to support our present views. While perhaps, ordinarily, prejudice will be presumed from the absence of the accused, yet, under the facts and circumstances here shown, we are satisfied that, the appellant being out on bail and having voluntarily absented himself without leave, he should be deemed to have waived his right to be present, and that the trial court correctly ruled in denying the motion for a new trial, so far as it was based on this ground.

The second question involved in the motion for a new trial is based upon the supposed bias and prejudice of one of the jurors. The facts relating thereto were presented by numerous and copious affidavits, and the issues of fact thus raised were by the trial court decided adversely to the appellant.

It would serve no good purpose to set forth the evidence thus presented, and to attempt to do so would unduly extend this opinion. It must suffice to say that such matters, especially when raised after the verdict, are within the sound discretion of the trial court, and its ruling cannot be disturbed unless an abuse of discretion appears. We have carefully read and considered all that was presented on this subject and find nothing which is sufficient to justify a holding that there was here an abuse of discretion.

Finding no prejudicial error, the judgment is affirmed.

MILLARD, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.