[Criminal No. 949.   Filed October 23, 1944.]

[152 Pac. (2d)  621.]

# THE STATE OF ARIZONA, Appellee, v. JOHN EARNEST RANSOM, Appellant.

Mr. Joe Conway, Attorney General, Mr. Thomas J. Croaff, Assistant Attorney General, Mr. James A. Walsh, County Attorney, Mr. J. V. McCrory, and Mr. Francis J. Donofrio, Deputies County Attorney, for Appellee.

Mr. Dwight L. Solomon, for Appellant.

ROSS, J.—The appellant Ransom was convicted in the superior court of Maricopa County of the crime of first degree murder and sentenced to suffer death. He has appealed, assigning as grounds therefor five designated errors which he claims the court committed during the trial. We will take up and consider these in the order in which they appear in appellant's brief.

(1) He requested the court to instruct the jury that if it found he killed deceased (Charlie Payne) upon a sudden quarrel or heat of passion, it was permitted to return a verdict of voluntary manslaughter. The court refused to give the instruction and the refusal is assigned as error. If there was any evidence upon

which to base such an instruction, it should have been given. It is the contention of the state, however, that there is no evidence to support the requested instruction. Parenthetically, appellant and most of the witnesses who testified belonged to the negro race, and Payne, the deceased man, to the white race. There is, then, no race question involved. Most of the evidence is from the mouths of colored people, and is to the effect that the killing of Payne was in a saloon on West Buckeye Road, number 1319, in Phoenix. It occurred between 8:30 and 10:30 at night, during which time the saloon was full of people, mostly negroes. Just what took place before the killing is not disputed, except perhaps by the appellant himself. All the witnesses, while not going into detail, practically agree as to what occurred.

One of the witnesses testified he heard appellant say to the deceased, "Give me back my dollar and a half or my beer," at which time deceased said, "Beg your pardon, kid, you ain't give me no dollar and a half." This witness further said: "Then when I looked around at them, then they were all hugged up and Ransom was cutting him here (indicating.) Then Payne had some empty glasses and a pitcher in his hand, and he sets it down on the beer box. They then got in a clinch, and then they got out of a clinch, and he cuts his throat right there, and then he grabbed his wrist." This statement is corroborated by other witnesses. It also appears appellant had no money with him. Very soon after he arrived in the saloon, he asked John Lewis for twenty-five cents with which to buy beer. This same witness Lewis testified that earlier, on September 4th, the appellant, in a cotton field near Luke Field, in his presence and in the presence of other cotton pickers, said: "I don't like him nohow (meaning Charlie

Payne); I would like to start some trouble with him to get to kill him.''

Because some other witnesses referred in their testimony, in a general way, to trouble between appellant and the deceased, it is contended that the instruction on manslaughter should have been given. A careful examination into the evidence to ascertain what the trouble was between them conclusively and without contradiction shows that if there was any trouble it was provoked by appellant, and maybe for the specific purpose of taking the life of the deceased.

Dr. O. C. West testified as to the wounds on the deceased's body. He says there were seven distinct wounds of an incisive, penetrating character, located in and about the head, chest and shoulders; that the wounds were inflicted by an instrument sharp enough to shave a sliver of bone from the fourth rib and a sliver from the fifth rib, one going in and the other coming out, unless it was a knife with two edges. One of the wounds was on the left shoulder, and another in the right temple. Both of these were superficial. Those about the chest penetrated into the lungs and caused decedent's death. The doctor was asked if he found on the body of deceased any evidence of resistance or defense, and he answered as follows:

''Usually in a body that has as many marks as this man had, I began to look for some marks on his hands and wrists and arms, elbows or somewhere to see if he had made any effort to get away from him. Seven punctures with a sharp instrument like that, there should have been some evidence of this man grabbing at him and trying to stop him. I found no evidence of defense on his hands, arms or any part of his body.''

■■ Clearly there is no evidence that would justify the instruction requested. We think the law is

clearly stated in *Singh* v. *State,* 35 Ariz. 432, 280 Pac. 672, 677, 67 A. L. R. 129, as follows:

" . . . Only such issues as are made by the evidence are ever properly submitted to the jury. Logically it follows that if the crime charged is divided into degrees, distinguishable from each other by the manner or circumstances under which it was committed, and all of the evidence conclusively shows the defendant guilty of the highest degree or nothing, it would be proper for the court to refuse to instruct on the second degree. If there was no evidence showing, or tending to show, the second degree, it would not be an issue. This is the general rule. *Bandy* v. *Ohio,* 102 Ohio St. 384, 131 N. E. 499, 21 A. L. R. 594, and note at [page] 603, where many cases are collated.

"If, when the crime charged is divided into two or more degrees, the evidence submitted conclusively shows the defendant either guilty of a degree certain or not guilty, we conclude the court may properly limit the jury's consideration in accordance therewith. . . . "

■ (2) The next error is based on the admission of certain testimony of W. E. Landers, owner of the saloon, relating to the conduct of appellant some two weeks before the killing of Charlie Payne, in claiming that the beer served him was not fit to drink. This testimony was not relevant nor competent, and as soon as that fact was made to appear was stricken with the concurrence of the county attorney, and the jury was instructed to disregard it.

In a close case we might be disposed to give this assignment consideration, but under the facts here it cannot possibly have done any harm or injury to appellant.

■ (3) The evidence was insufficient to support the verdict, appellant's counsel says.

In addition to the evidence heretofore related in this opinion, it appears that appellant as soon as he

had killed or fatally wounded deceased left the saloon, and when arrested some two or three hours later had changed his clothes. As a witness in his own behalf he admitted he was in Landers' saloon on the evening of the homicide, but denied he committed the crime. This, notwithstanding earlier he had admitted to deputy sheriff LaMore that he had cut deceased and told the deputy sheriff where he had left his coat and knife after the killing.

In view of all the evidence, the contention that it was insufficient to support the verdict is without any merit whatever.

(4) Appellant was represented in his trial by two very able lawyers, members of the local bar, to-wit: Dwight L. Solomon and Milton L. Ollerton. While the former was arguing the case to the jury, Ollerton, in a whisper, informed the court the defendant desired to go to the toilet, and requested that a deputy sheriff accompany him. The court granted the request, and the defendant, in charge of a deputy, went to the toilet, which was about twelve feet from the courtroom, and was there not to exceed five minutes when he returned in the deputy's charge to the courtroom.

It is contended by appellant that the permitting of appellant to absent himself from the courtroom during the argument, without an order of record first being entered allowing such absence, is reversible error.

Section 44–1401, Arizona Code Annotated 1939, reads as follows:

"*Presence of defendant when prosecution for felony.*—In a prosecution for a felony the defendant shall be present:

"(a) At arraignment.

"(b) When a plea of guilty is made.

"(c) At the calling, examination, challenging, impanelling and swearing of the jury.

"(d) At all proceedings before the court when the jury is present.

"(e) When evidence is addressed to the court out of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury.

"(f) At a view by the jury.

"(g) At the rendition of the verdict.

"If the defendant is voluntarily absent the proceedings mentioned above except those in clauses (a) and (b) may be had in his absence if the court so orders."

If this section is valid, appellant's complaint is without merit. Formerly the statute, Section 5028, R. C. 1928, prescribed that "If the prosecution is for a felony, the defendant must be personally present at the trial"; and under such statute it is probable the appellant's contention would be correct, but since the adoption of Section 44–1401, *supra,* the rule there prescribed governs in the matter, and the presence of the defendant cannot be dispensed with "at [his] arraignment" and "when a plea of guilty is made." In these two instances, under the law as it is written, he must be personally present, but in all other proceedings, if his absence is voluntary and authorized by the court's order, he may not complain. Appellant, however, says that his absence during the argument by his counsel to the jury was not of record as ordered or authorized by the court. In other words, he stands upon the very technical contention that the order was not entered of record before he absented himself.

We think the court's permission is the governing thing, rather than the entry of the order to that effect. The order granting the absence was the essential thing, rather than its entry of record. The appellant's absence was voluntary and consented to by both himself and his counsel, and was at a time

in the proceedings when the statute allowed him to be absent with the permission of the court, and we conclude that the action of the court was not erroneous. Cases bearing upon the point are *Frank* v. *State,* 142 Ga. 741, 83 S. E. 645, L. R. A. 1915D, 817; *Boreing* v. *Beard,* 226 Ky. 47, 10 S. W. (2d) 447; *State* v. *Henderson,* 168 La. 487, 122 So. 591; *McClendon* v. *State,* 36 Okl. Cr. 11, 251 Pac. 515; *State* v. *Smith,* 183 Wash. 136, 48 Pac. (2d) 581, 100 A. L. R. 474, at note (b) under annotation at page 480.

█ (5) The fifth and last ground of appeal is set out in appellant's brief as follows:

"The misconduct of the county attorneys in arousing prejudice against defendant by having the son of the deceased, in army uniform, sit within six (6) feet of the jury box all during the trial, and bringing this to the attention of the jury."

This ground is presented by the affidavit of appellant's attorney to the supreme court for the first time. It was not raised in the trial court either before, during or after the trial. At the trial, and before any witness had testified, the county attorney made this statement:

"Your Honor, I forgot during the time that the witnesses were sworn to have Corporal Payne sworn. He isn't any witness to any of the material facts of the case, he wasn't present, but I would like to have him excluded unless counsel for the defense will stipulate he may remain in the courtroom."

He was not sworn as a witness nor used as one. No objection to his being present during the trial was made by appellant or his counsel. If his act in attendance upon the trial and observing the proceeding was prejudicial, the lower court's attention was not called to that fact by counsel. There being no ruling upon the point by the trial court, the question cannot for the first time be raised in this court.

We have very carefully and thoughtfully looked into the record to discover if there was any reason to grant the appellant a new trial, but have been unable to find any, and certainly his counsel has not been able to direct our attention to any such reason.

The judgment is affirmed.

McALISTER, C. J., and STANFORD, J., concur.