[No. 4652–1. Division One. August 22, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. DARCY
DEE LABELLE, *Appellant.*

*Whitton & Warner* and *Peter L. Whitton,* for appellant
(appointed counsel for appeal).

*David S. McEachran, Prosecuting Attorney,* and *William A. Gardiner, Deputy,* for respondent.

CALLOW, J.—Defendant LaBelle appeals a jury finding of guilty, asserting that it was error to proceed with the trial of his case when he was not present.

Darcy Dee LaBelle and Kenneth Fox were charged by information dated January 18, 1972, with burglary in the second degree. On January 19, 1972, both defendants appeared without counsel and advised the court that they were making arrangements to engage an attorney and did not wish to proceed with arraignment at that time. On January 28, 1972, they appeared again without counsel and the court appointed an attorney to represent both of them.

On February 11, 1972, both defendants appeared in court with their appointed counsel. A continuance for arraignment was granted to an indefinite time, and on February 18, 1972, LaBelle posted bail and was released from custody.

On March 10, 1972, Fox appeared without counsel. LaBelle appeared with the court–appointed attorney, acknowledged that he had received a copy of the information, and requested additional time in which to enter a plea. On March 24, 1972, LaBelle appeared with counsel and was arraigned. He pleaded not guilty and the court continued the matter to the next jury trial setting.

On April 12, 1972, an order was entered setting the trial for May 10, 1972. LaBelle, through his attorney, moved for separate trials. The motion was denied. Another attorney, who had been appointed for Fox, told the court that if separate trials were granted he was prepared to go to trial with his client on May 10, 1972.

On May 10, 1972, trial commenced with Fox appearing personally and with his attorney. LaBelle was absent, but his attorney was present. Counsel for LaBelle moved that his client be permitted to waive his right to trial by jury and be tried by the court. Defense counsel stated, "I have an affidavit prepared by the defendant which he was to sign this morning which would indicate his desire to be tried without a jury." Defense counsel also said that he had advised LaBelle to be tried by jury, but that LaBelle "was

reluctant" and had telephoned him the day before and indicated he would like to be tried by the court rather than by a jury. The motion to grant LaBelle a nonjury trial was denied as not timely. On the morning of May 10, the following colloquy took place between court and counsel:

THE COURT: . . .

Now, for the record, . . ., your client has not appeared as yet?

[DEFENSE COUNSEL]: Right. Like I say, I talked with him last night and I had no indication. He indicated quite positively that he would be here at 9:00 o'clock. I had a shirt and tie that he was going to wear, and so possibly some delay. The witness that I have out here feels that he can perhaps locate the defendant.

THE COURT: I think at this time, though, with the defendant having known that the trial date was, and the time was at 9:30 this morning, we will proceed with the selection of the jury.

A bench warrant was issued for LaBelle's arrest and a jury was selected that morning.

On May 11, 1972, in the absence of the jury, counsel moved for a further continuance of the trial due to the absence of LaBelle. The following colloquy took place:

THE COURT: Are there any matters in the absence of the jury?

[DEFENSE COUNSEL]: Yes, Your Honor. I may inform the Court that I have not been able to locate the defendant Labelle. I did have a phone call from his friend who put up the bond and he was also looking for him, but it was his indication to me that he didn't have much hope that he would find him, and it appears that Mr. Labelle has disappeared, and so in light of that, my not expecting him to appear, not really knowing the reason, specific reason why he's not here, I would move . . . for a continuance of the trial as far as it concerns the defendant Labelle.

My reasons for continuance—first of all, does the prosecutor, would you go along with a continuance?

[PROSECUTOR]: No.

[DEFENSE COUNSEL]: You would oppose the continuance?

[PROSECUTOR]: Yes, I would oppose it.

[DEFENSE COUNSEL]: I feel that the constitution of the State of Washington and the constitution of the United States clearly provide in Article I, Section 22 that a defendant has a right to appear, and I'll just read, "In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel, to demand the nature and cause of the accusation against him."

It goes on further that he has the right to testify in his own behalf, to meet witnesses' against him face to face, etcetera.

. . .

I can think of possible problems that the prosecution could have in the absence of the defendant, namely, identity, and I think that's part of the corpus delicti of the charge in this matter, . . .

. . .

[DEFENSE COUNSEL]: I might just add one thing. I was going to call the defendant. This was a foreseeable possibility, and I think I would call him if he was here.

THE COURT: Well, I grant you that the constitution does provide that the defendant has a right to be present and to be confronted by the witnesses against him. Is there anything the Court has done that has denied him this right?

[DEFENSE COUNSEL]: Not that I can see, no.

THE COURT: It's my understanding from your statement yesterday that the defendant was aware of the trial date and he was in your office the evening before.

[DEFENSE COUNSEL]: Well, I had contacted him the evening before, yes.

THE COURT: Yes. And he was aware of the trial date and it had been fixed for a considerable period of time, and I frankly don't know of anything that the Court has done or that the prosecution has done to deny him the right to be present. If he is ill or if he's been injured, physically unable to be here or communicate with the Court, I'm sure that that would be sufficient grounds to grant a continuance, but there's no indication whatsoever that either of these events have occurred.

So the Court will direct that the trial proceed in his absence. If something should show up later justifying his absence from the jurisdiction or from the court today, we can take that up on subsequent motion if he can prove that he was ill or in some condition where he could not

communicate. We could certainly grant him a new trial at that time. So the motion for a continuance on the part of Darcy Dee Labelle will be denied at this time.

The jury trial proceeded to a conclusion with verdicts of guilty being returned against both defendants.

On June 2, 1972, trial counsel moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, on the ground that LaBelle had not been present at his trial to confront his accusers, to conduct cross–examination, to give testimony if necessary, and to assist in his own defense. Defense counsel stated at that time in argument:

[DEFENSE COUNSEL]: I believe my motion has a little different thrust. I've moved on behalf of the defendant, Darcy Dee Labelle, for a new trial, and the crux of my motion is the fact that the defendant was not present at any time during the trial. The Court was advised, as the record will show, that he did not appear for trial on the morning of the trial, nor did he appear at any time during the trial. At the commencement of the trial I did move for a continuance until the defendant could be found or until he returned or until some determination was made as to where the defendant, or the cause of his delay, and I feel that the Court in denying my motion assumed the presumption that his non appearance was not justified, and I feel that this . . . is not consistent with the basic right which a defendant has . . .

. . .

I think under these circumstances where we don't have any conclusive evidence or proof as to why he didn't show up, I think it is in violation of his basic constitutional right to be present.

Another point which was not argued before along this line that I think bears out and supports the defendant's motion here is the fact that the night of the trial when . . . I was reviewing the case with him, at that time it was . . . our understanding that he was to be tried on the second degree burglary charge and the auto theft. There had been indications, granted, from the prosecutor that the auto theft charge may be dropped, but at that time we had pled not guilty to both auto theft, I believe it's auto theft or involving a stolen automobile in any event,

and the second degree burglary. The morning of the trial the prosecutor did amend their pleadings to dismiss that charge, and I feel that that is a significant factor that . . . would have been . . . weighed by the defendant in deciding what sort of plea he would enter, and I'm not saying that had he known that the auto theft charge would have been waived that he would have pled guilty, but I'm saying that he's entitled to the opportunity to be confronted with this alternative in making his decision on giving a plea to it, entering a plea to the charge of second degree burglary.

The motion was denied, the court stating *inter alia:*

THE COURT: . . .

I think admittedly we have a novel situation here, and the Court had made the determination that the defendant Labelle had been fully aware, made fully aware by his counsel the night before the trial started of the fact that the trial was scheduled at 9:30 the following morning, and the defendant failed to appear. There's nothing to indicate that it was nothing but absolutely voluntary on his part, and the Court finds at this time that it was voluntary and he waived his right to be present at his trial.

The Court will not sentence at this time. The Court will reserve that until such time as the defendant is produced, and if it appears when the defendant has been brought into custody that his absence was other than voluntary and deliberate on his part, then, of course, the question of new trial may be resubmitted at that time, and we will certainly listen to him, but the motion at this time for a new trial because of the absence of the defendant during the actual trial will be denied.

Nearly 4 years later, on March 8, 1976, LaBelle was arrested on the outstanding warrant. On April 5, 1976, when the defendant was before the trial court, we find the following questions and answers:

BY THE COURT:

Q Mr. Dee LaBelle, why did you fail to appear for trial the last time?

A Because the court–appointed attorney I had . . . told me that, he said, "It's not what you did, it's who you are. You're going to get at least five years."

Q As you know, Mr. Dee LaBelle, I was not the judge that tried that case, —
A Yes.
Q —and I've heard some, I suppose you call it Courthouse rumor which may or may not be a true impression, was that you had talked to [Defense Counsel] the night before the trial was scheduled to begin, at least my impression is that's what [Defense Counsel] said, and on the morning when you failed to show you simply weren't there. Is that it?
A It could have been the day before. I'm not sure. I was very heavily into alcohol during that period . . .
Q Are you suggesting that you got drunk and left; that you wouldn't have left had you not been drinking?
A No, no, sir, I didn't get drunk but as soon as I got out of jail on the, on the bond, the bail the last time I haven't had a drop of liquor since. So I wasn't drinking.

. . .
Q Where did you go when you left?
A I first went into Oregon.
Q Generally what have you done. How long has this been, a couple of years?
   [DEFENSE COUNSEL]: Four years.
   THE COURT: Four years?
   [DEFENSE COUNSEL]: Approximately.

On April 9, 1976, a motion to vacate the order denying a new trial was denied and judgment and sentence were entered on the verdict of the jury.

The record is clear that the absence of the defendant from the trial was voluntary. He has shown no excuse for his failure to attend. The defendant asserts that he was denied a fair trial as a matter of law when the entire trial was held in his absence. He bases this contention on the proposition that (1) the sixth amendment to the United States Constitution, and article 1, section 22 of the Washington State Constitution establish that a criminal defendant's right to be present from the commencement of his trial to its conclusion, and to confront adverse witnesses, is a fundamental right; (2) only when an accused

either (a) while free on bail or on his personal recognizance, voluntarily absents himself from his trial after it has commenced, or (b) during his trial conducts himself in a manner so disorderly or disruptive that the trial cannot be carried on with him present in the courtroom, is a court permitted to presume the accused made a voluntary and intelligent waiver; (3) defense counsel had intended to have the defendant testify; and (4) when the prosecutor moved to dismiss a second count of grand larceny prior to trial and the trial court proceeded with the trial, the defendant was deprived of the opportunity to plead guilty to the only offense remaining, that of burglary in the second degree.

■ The right of a criminal defendant to be present at trial and to confront the witnesses against him has a long history. The Magna Charta contains the following guaranty:

> No free man shall be taken or imprisoned or disseised, or outlawed or exiled or in any way ruined, nor will we go or send against him, except by the lawful judgment of his peers or by the laws of the land.

Acceptance of the varied facets of the right to confrontation has been gradual,[1] but the right of an accused to be present at trial and to confront the witnesses against him has now evolved into a fundamental tenet of criminal procedure. As stated in *Illinois v. Allen*, 397 U.S. 337, 338, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970):

> The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right

---

[1]For accounts of early trials involving the right to confrontation, see *Trial of Sir Nicholas Throckmorton*, 1 State Trials 869, 875–76 (1554); *Trial of Sir Walter Raleigh*, 2 State Trials 1, 15, 16, 18 (1603); *Trial of William Viscount Stafford*, 7 State Trials 1293, 1341 (1680); *Proceedings against Sir John Fenwick*, 13 State Trials 538, 591–92, 638, 712 (1696).

See also 9 W. Holdsworth, *A History of English Law* 230 (1926); 1 J. Stephen, *History of the Criminal Law of England* 358 (1883); 5 J. Wigmore, *Evidence* §§ 1395, 1397, 1399 (Chadbourn rev. 1974); Goldin, *Presence of the Defendant at Rendition of the Verdict in Felony Cases*, 16 U. Pa. L. Rev. 18 (1916); Larkin, *The Right of Confrontation: What Next?*, 1 Tex. Tech. L. Rev. 67 (1969); Pollitt, *The Right of Confrontation: Its History and Modern Dress*, 8 J. of Pub. Law 381 (1959).

. . . to be confronted with the witnesses against him. . . ." We have held that the Fourteenth Amendment makes the guarantees of this clause obligatory upon the States. *Pointer v. Texas,* 380 U. S. 400 (1965). One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial. *Lewis v. United States,* 146 U. S. 370 (1892).

This right to confrontation "is basically a trial right," *Barber v. Page,* 390 U.S. 719, 725, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968), yet it is not an absolute right. *See Illinois v. Allen, supra* at 343; *Diaz v. United States,* 223 U.S. 442, 455, 56 L. Ed. 500, 32 S. Ct. 250 (1912). It may be waived. *Snyder v. Massachusetts,* 291 U.S. 97, 106, 78 L. Ed. 674, 54 S. Ct. 330, 90 A.L.R. 575 (1934). In *Mattox v. United States,* 156 U.S. 237, 243, 39 L. Ed. 409, 15 S. Ct. 337 (1895), we find:

[G]eneral rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to consideration of public policy and the necessities of the case. . . . The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject—such as his ancestors had inherited and defended since the days of the Magna Charta. Many of its provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant.

A waiver of a fundamental right, however, "is not lightly to be made." *Moore v. Michigan,* 355 U.S. 155, 161, 2 L.

Ed. 2d 167, 78 S. Ct. 191 (1957). Indeed, once the pertinence of a fundamental right is acknowledged, courts indulge every reasonable presumption against the waiver of that right. *Hodges v. Easton,* 106 U.S. 408, 412, 27 L. Ed. 169, 1 S. Ct. 307 (1882); *State v. Williams,* 87 Wn.2d 916, 921, 557 P.2d 1311 (1976); *Little v. Rhay,* 8 Wn. App. 725, 728, 509 P.2d 92 (1973). A waiver, as defined in *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938), "is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Accord, In re Smith,* 85 Wn.2d 738, 740, 539 P.2d 83 (1975), *cert. denied,* 424 U.S. 974 (1976).

Amendment 10, article 1, section 22 of the Washington State Constitution reads in part:

Rights of the Accused. In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases: . . .

RCW 10.46.120, which was in effect at the time this case arose, dealt with the right to confrontation, providing:

Personal presence of defendant. No person prosecuted for an offense punishable by death, or by confinement in the penitentiary or in the county jail, shall be tried unless personally present during the trial.

The importance of safeguarding the right to confrontation has been recognized since territorial days. *Cf. State v. Walker,* 13 Wn. App. 545, 556, 536 P.2d 657 (1975); *Shapoonmash v. United States,* 1 Wash. Terr. 188 (1862). However, the courts of this state have acknowledged that the right may be waived in certain circumstances. *See State v. Perkins,* 32 Wn.2d 810, 863, 204 P.2d 207, *cert. denied,* 338 U.S. 862, 94 L. Ed. 529, 70 S. Ct. 97 (1949); *State ex rel. Gabe v. Main,* 66 Wash. 381, 384, 119 P. 844 (1911).

CrR 3.4 reflects an awareness of the practical necessity of going forward where the defendant voluntarily absents himself. It reads in part:

### PRESENCE OF THE DEFENDANT

(a) **When Necessary.** The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.

(b) **Effect of Voluntary Absence.** In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. . . .

(c) **Defendant Not Present.** If in any case the defendant is not present when his personal attendance is necessary, the court may order the clerk to issue a warrant for his arrest, which may be served as a warrant of arrest in other cases.[2]

In *Broecker v. State,* __ Ind. App. __, 342 N.E.2d 886 (1976), *State v. Carpenter,* 541 S.W.2d 340 (Mo. Ct. App. 1976), and *Parker v. State,* 556 P.2d 1298 (Okla. Crim. App. 1976), the criminal defendant was in custody but refused to enter the courtroom during any state of his trial. These voluntary actions by the defendants in question were deemed to amount to waivers of their right to be present.

In *United States v. Tortora,* 464 F.2d 1202, 1208–10 (2d Cir.), *cert. denied,* 409 U.S. 1063, 34 L. Ed. 2d 516, 93 S. Ct. 554 (1972), Santoro, one of the accused, had been present at arraignment, had entered a plea of not guilty, and had been released on bond. The night before the trial, Santoro called his attorney to arrange transportation to court the following morning. When the trial commenced the next morning, however, Santoro did not appear. No justification was ever offered for his absence. The trial continued

---

[2]RCW 10.46.120 was superseded by CrR 3.4 effective July 1, 1973. We realize that the rule was not in effect at the time the defendant failed to appear. *Compare* Fed. R. Crim. P. 43 *with* CrR 3.4.

to its conclusion, and Santoro and a codefendant were convicted. Santoro appealed, asserting that the trial could begin only when he was present. The court held:

When a defendant has pleaded to the charges against him and knows that the trial of the charges is to begin on a day certain, the trial may start in his absence if he deliberately absents himself without some sound reason for remaining away. . . .

. . .

Waiver of a constitutional right must be both "knowing" and "voluntary." A defendant who deliberately fails to appear in court. does so voluntarily, and thus the important question is whether his absence can be considered a "knowing" waiver. We hold that it can. The deliberate absence of a defendant who knows that he stands accused in a criminal case and that the trial will begin on a day certain indicates nothing less than an intention to obstruct the orderly processes of justice. No defendant has a unilateral right to set the time or circumstances under which he will be tried. See United States v. Bentvena, 319 F.2d 916 (2d Cir.) cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). When a trial judge designates a date for trial the defendant's obligation is to appear ready in court on that date. "[T]he right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 4, 96 L.Ed.3 (1951).

Without this obligation on the accused the disposition of criminal cases would be subject to the whims of defendants who could frustrate the speedy satisfaction of justice by absenting themselves from their trials. Today more than ever the public interest demands that criminal proceedings be prosecuted with dispatch, see Second Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 28 U.S.C.A. 442 (1972 Supp.), and the greater the delay between the charge and the trial date, the greater the likelihood that witnesses will be unable to appear or that their memories will have faded and their testimony will be less convincing. That a defendant can be convicted of bail–jumping if he fails to appear at trial is not sufficient to vindicate the public interest; the public is entitled to a speedy disposition of the criminal charges absent a finding by the court that good reasons

exist for delay. "Thus there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." Illinois v. Allen [397 U.S. 337, 349, 25 L. Ed. 2d 353, 90 S. Ct. 1057, 1063 (1970) (Brennan, J., concurring).] A defendant's knowing and deliberate absence does not deprive the court of the power to begin the trial and to continue it until a verdict is reached.

Before a trial may proceed in the defendant's absence, the judge must find that the defendant has had adequate notice of the charges and proceedings against him. Notice is initially given to a defendant by the issuance of an indictment. But not until the defendant answers the indictment by pleading in open court to the charges therein can a court know with certainty that the defendant has been apprised of the proceedings begun against him. Thus no defendant can be tried until after he personally has entered a plea to the charge. It must clearly appear in the record, however, that the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place before the trial may proceed in his absence. Cureton v. United States, 130 U.S. App. D.C. 22, 396 F.2d 671, 676 (1968); State v. Tacon [107 Ariz. 353, 488 P.2d 973 (1971)]. This assures that the defendant has been accorded an opportunity to be present at all critical stages of the trial, see Rule 43 F.R.Crim.P., and thereby affords him due process of law. Having received actual notice when trial proceedings will take place, in the absence of some compelling excuse the defendant cannot obstruct the course of justice by absenting himself from the process, cf. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

(Footnote omitted.) *United States v. Tortora, supra* at 1208–09.

In *United States v. Peterson,* 524 F.2d 167, 182–85 (4th Cir. 1975), *cert. denied,* 424 U.S. 925 (1976), Smith, one of several charged with robbery, was personally present at arraignment and entered a plea of not guilty. He was subsequently present at a pretrial suppression hearing and, when his surety bond was executed, he was released on bail.

The day prior to trial, his counsel contacted him advising him of the date, time and place of trial, and of the importance of appearing in court the following day. His counsel also arranged for his transportation to court. The following day Smith was nowhere to be found. The trial proceeded to a conviction. No explanation for Smith's absence was ever offered. He appealed, claiming his presence was indispensable at the commencement of the trial. In rejecting this contention, the court noted that the two reasons for the common–law right of presence during trial were:

> (1) assuring a nondisruptive defendant the *opportunity* to observe all stages of the trial not involving purely legal matters so as to prevent the loss of confidence in courts as instruments of justice; and (2) guaranteeing the defendant the *opportunity* to aid in his defense so as to protect the integrity and reliability of the trial mechanism.

The decision continues stating:

> So long as the defendant has been provided with *the opportunity to be present,* neither purpose is thwarted by a defendant's voluntary exercise of his option not to attend. The very purpose of the exception [in the federal rule comparable to CrR 3.4] is to prevent an accused from defying with impunity "the processes of that law, * * * [paralyzing] the proceedings of courts and juries and * * * [turning] them into a solemn farce * * *." To permit a defendant, free on bail, to obstruct the course of justice by absconding without a compelling reason, after having received actual notice of the time and place of trial, is as inconsistent with the purposes of the rule as to permit a defendant to abscond after the trial has commenced. We therefore hold that a defendant may waive his right to be present at the commencement of his trial just as effectively as he can waive his right to be present at later stages of the proceedings.
>  . . . Normally it is preferable for a defendant to be present at his trial, but we recognize, as did Judge Lumbard in *Tortora,* that our holding does not establish "a general rule that, in every case in which the defendant is voluntarily absent at the empanelment of the jury * * *, the trial judge should proceed with the trial." Indeed, not every case involving a defendant's voluntary

absence at the commencement of the trial is a proper one in which to proceed to trial *in absentia. See, e. g., Campbell v. United States* (D.C. App. 1972) 295 A.2d 498. Instead, each case turns upon "a complex of issues," including "the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple–defendant trials; the burden on the Government in having to undertake two trials, again particularly in multiple–defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy." Thus the decision whether to proceed to trial is vested in the sound discretion of the trial judge.

(Footnotes omitted.) *United States v. Peterson, supra* at 184–85.

In *State v. Goldsmith,* 112 Ariz. 399, 542 P.2d 1098, 1100 (1975), the accused was charged with second–degree murder. He was aware of the time, date and place of the trial. Before being released from custody prior to trial, the accused signed a release order that stated that trial would commence if he voluntarily absented himself. He did not appear at trial. During the trial the accused contacted his counsel on three separate occasions in addition to writing his wife telling her he was "running." Following his conviction in absentia, but prior to sentencing, the defendant also wrote the trial judge stating that he was "still running away." The defendant, although still at large at the time the appeal was filed, appealed. He contended that the seriousness of the charge required the trial judge to forego commencement of the trial until he was present, and urged that the matter be remanded for an evidentiary hearing to afford him the opportunity to rebut the trial court's finding that his absence was voluntary. Holding that "[t]he key factor is not the seriousness of the charge but that the accused, upon notice, has voluntarily absented himself from proceedings against him," the court rejected the defendant's claims and held that the findings that the defendant had voluntarily absented himself and proceeding without

the defendant present were not abuses of discretion. *See generally* J. Cook, *Constitutional Rights of the Accused: Trial Rights* § 5 (1974); 8B J. Moore's Federal Practice ¶ 43.02[2] (Supp. 13–14, 1976); Annot., 25 L. Ed. 2d 931 (1970); Annot., 21 A.L.R. Fed. 906 (1974); Annot., 68 A.L.R.2d 638 (1959); Annot., 26 A.L.R.2d 762, 786 (1952).[3]

The United States Supreme Court has dealt with the issue peripherally. In *Tacon v. Arizona*, 410 U.S. 351, 35 L. Ed. 2d 346, 93 S. Ct. 998 (1973), the defendant, while in the army stationed in Arizona, was arrested and charged with the unlawful sale of marijuana. Prior to trial the defendant was discharged from the army and voluntarily left Arizona for New York giving his attorney an address where he could be reached. When notified of the trial date, the defendant lacked the funds to return. The trial commenced and proceeded to its conclusion in his absence, the jury returning a verdict of guilty. The court refused to consider the constitutional limits on a state's authority to try in absentia a person who had voluntarily left the jurisdiction and was unable for financial reasons to return as the issue had not been raised during the trial. The court then dismissed the petition for a writ of certiorari, stating that the finding that the defendant's absence was a knowing and intelligent waiver was "primarily a factual issue which does not, by itself, justify the exercise of our certiorari jurisdiction."

In *Taylor v. United States*, 414 U.S. 17, 19, 38 L. Ed. 2d 174, 94 S. Ct. 194 (1973), the defendant was present at the morning session of his trial, but following the noon recess he could not be found. The trial was recessed until the following morning. When the defendant was still not present, the trial court proceeded with the trial to its conclusion in defendant's absence. The defendant was found guilty and

---

[3]For cases reaching a different conclusion than that reached in *Tortora, Peterson*, and *Goldsmith, see People v. Davis*, 39 Ill. 2d 325, 235 N.E.2d 634 (1968); *People v. Evans*, 21 Ill. 2d 403, 172 N.E.2d 799 (1961); *Commonwealth v. Felton*, 224 Pa. Super. 398, 307 A.2d 51 (1973), *cert. denied*, 415 U.S. 984 (1974); *State ex rel. Underwood v. Brown*, 193 Tenn. 113, 244 S.W.2d 168 (1951).

appealed. His appeal was based on the proposition that unless it was demonstrated that

he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him,

his mere voluntary absence from the trial could not be an effective waiver. The court rejected this assertion, holding:

Petitioner had no right to interrupt the trial by his voluntary absence, as he implicitly concedes by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence. The right at issue is the right to be present, and the question becomes whether that right was effectively waived by his voluntary absence. Consistent with Rule 43 and Diaz [Diaz v. United States, 233 U.S. 442, 56 L. Ed. 500, 32 S. Ct. 250], we conclude that it was.

It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, see Stack v. Boyle, 342 U. S. 1, 4–5 (1951), entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, "that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue— would not know that as a consequence the trial could continue in his absence." 478 F.2d, at 691. Here the Court of Appeals noted that when petitioner was questioned at sentencing regarding his flight, he never contended that he was unaware that a consequence of his flight would be a continuation of the trial without him. Moreover, no issue of the voluntariness of his disappearance was ever raised. As was recently noted, "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." Illinois v. Allen, 397 U.S. 337, 349 (1970) (Brennan, J., concurring).

Taylor v. United States, supra at 20.

■ Here, the defendant (1) was present with his counsel at arraignment on March 24, 1972; (2) was at that time formally charged by information with the crimes of burglary in the second degree, count 1, and grand larceny, count 2; and (3) entered a plea of not guilty. There has been no claim that the defendant was not fully aware of the specific time, date and place of the trial, or that he was not represented ably by counsel during the trial. He has offered no satisfactory explanation for his absence, and has never contended that he was unaware of his right to be present at trial. *Cf. People v. Snyder,* 56 Cal. App. 3d 195, 128 Cal. Rptr. 297, 300–01 (1976); *People v. Colombani,* 16 N.Y.2d 1055, 213 N.E.2d 460, 266 N.Y.S.2d 129 (1965). Indeed, as in *Tortora* and *Peterson,* the defendant actually spoke with his counsel by phone the night before the trial. His absence while on bail amounts to a knowing, voluntary, and deliberate waiver of his right to be present and personally participate in his trial. The trial court may find that a defendant has waived this constitutional right in such circumstances without harm to the spirit of the right. *State v. Smith,* 183 Wash. 136, 48 P.2d 581, 100 A.L.R. 474 (1935).

The fact that the prosecutor amended the information 2 days prior to trial, by dropping the grand larceny charge, does not require a contrary conclusion. The defendant was not denied the opportunity to enter a plea on the second-degree burglary charge (*see United States v. Tortora,* 464 F.2d 1202, 1209 (2d Cir. 1972)), or required to plead to a new charge without being fully informed of all the elements of the offense (*see Henderson v. Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976)). He knew that he was charged with second–degree burglary, entered a plea of not guilty, and was found guilty of that crime. He cannot claim that he was surprised to his detriment.

We hold that when a criminal defendant is presented at arraignment, enters a plea, receives actual notice of the time, date and place of the trial, deliberately absconds without a compelling reason, is represented by counsel at trial, and never offers a satisfactory explanation for his

398

absence, a trial court may find such actions on the part of the defendant to amount to a knowing and voluntary waiver of his right to be present and may conduct the trial in his absence. Such an action by the trial court will not be a material departure from the spirit of the right, for the protection afforded the accused in the right to confrontation need not be adhered to blindly regardless of the cost to society. *Illinois v. Allen*, 397 U.S. 337, 349, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970). One cannot indiscriminately obstruct the course of justice and then rely on constitutional safeguards to shield him from the legitimate consequences of his own wrongful act. *Illinois v. Allen, supra* at 345–46, 350; *Reynolds v. United States*, 98 U.S. 145, 158, 25 L. Ed. 244, 247 (1878); *Falk v. United States*, 15 App. D.C. 446, 460–61 (1899), *appeal dismissed*, 180 U.S. 636, 45 L. Ed. 709, 21 S. Ct. 922 (1901).

The judgment is affirmed.

SWANSON and ANDERSEN, JJ., concur.

Petition for rehearing denied October 10, 1977.