48 P.3d 385 (2002)
112 Wash.App. 312
STATE of Washington, Respondent,
v.
Benjamin Lee GARZA, Appellant.
No. 47653-0-I.
Court of Appeals of Washington, Division 1.
June 24, 2002.
*386 Elaine L. Winters, Seattle, for Appellant.
Daniel Jason Clark, Deputy Pros. Atty., Seattle, for Respondent.
KENNEDY, J.
Benjamin Garza, while on his way to his trial which was underway in King County Superior Court, was arrested by a Lynnwood police officer on an outstanding warrant and incarcerated in Snohomish County. Unaware of Garza's whereabouts, the court made a preliminary finding of voluntary absence and proceeded with the trial. After the guilty verdict, Garza moved for a new trial, arguing that he had not voluntarily waived his right to be present at trial. The trial court denied the motion, finding that Garza voluntarily waived the right to be present at trial because he was arrested and detained on an outstanding warrant and because he did not notify the court or counsel of his whereabouts. We hold that Garza's failure to make reasonable efforts to notify the court or counsel of his incarceration constituted voluntary waiver, and affirm the trial court's ruling on that basis.

*387 I
Benjamin Garza was charged with attempting to elude a pursuing police officer, and was tried before a jury in King County Superior Court. Garza was present when pre-trial motions began on Monday June 12, 2000, and was also present for trial on June 13, 14, and 15. Garza often arrived late, however, and the court warned him to be on time. On Thursday June 15, the court recessed the trial until the following Monday. When court reconvened on Monday, June 19, Garza was not there. When the court inquired about Garza's whereabouts, defense counsel indicated that Garza had left a voice mail message saying that he would be at court at 9:20 a.m., at the latest. Counsel asked the court to allow a few more minutes before proceeding. The court noted Garza's previous tardiness, but waited a few more minutes to see if Garza would show up. At 9:25 a.m., the court found preliminarily that Garza was voluntarily absent, and proceeded with the trial. The court forbade the parties from commenting on Garza's absence in the presence of the jury. At 10 a.m., the trial court allowed a brief recess so that defense counsel could check his voice mail. There were no new messages from Garza. At 11:05 a.m., the court issued a bench warrant for Garza's arrest. Later that day, the defense rested its case. Defense counsel called King County Jail that evening, but Garza was not there.
The next day, June 20, Garza again failed to appear for trial. The parties prepared jury instructions and gave closing arguments. The jury found Garza guilty as charged.
Garza, who had been arrested by a Lynnwood police officer on the morning of June 19th as he was on his way to the King County Courthouse, was released from custody at 7:19 p.m., that same evening. He failed to contact his attorney, however, until June 22, two days after the guilty verdict and three days after his release from custody. On July 21, 2000, Garza moved for a new trial, contending that he had not been voluntarily absent from trial. Defense counsel explained that on the morning of June 19, Garza "had been picked up by Lynnwood police while on his way to court. He had a warrant out of Bothell and they detained him. He told the officer that he was on his way to court and to call the court. They did not do so." When the trial court asked Garza how he got picked up, Garza said that the friend who was driving him to court was pulled over for a traffic infraction. When the police officer ran Garza's name, he discovered an outstanding warrant, and arrested Garza. Garza said, "And then I told him, I go, well, if I'm going to get picked up please notify King County to let them know that I can't make it in."
The trial court denied Garza's motion, ruling that Garza's own failure to take care of his outstanding warrant resulted in his arrest and confinement and constituted a voluntary waiver of his right to be present at trial. The court also noted that Garza could have contacted his attorney or the court to inform them of his whereabouts, but that Garza failed to do so until after the trial was over.
Garza filed this timely appeal.

II
A trial court's decision to proceed with a trial in the defendant's absence is reviewed for abuse of discretion. State v. Thomson, 123 Wash.2d 877, 884, 872 P.2d 1097 (1994). The denial of a motion for a new trial is also reviewed for abuse of discretion. State v. Copeland, 130 Wash.2d 244, 294, 922 P.2d 1304 (1996). A trial court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, for untenable reasons." State ex. rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
An accused person has a right under the federal and state constitutions to be present at trial. U.S. Const., amendments 5, 6, 14; Wash. Const. Art. 1, sec. 22; Thomson, 123 Wash.2d at 880, 872 P.2d 1097; United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). However, this right may be waived provided that the waiver is knowing and voluntary. Thomson, 123 Wash.2d at 880, 872 P.2d 1097; Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). A voluntary absence after trial has begun constitutes an *388 implied waiver of the right. State v. Rice, 110 Wash.2d 577, 619, 757 P.2d 889 (1988). CrR 3.4(b) provides that in non-death-penalty cases, "[t]he defendant's voluntary absence after the trial has commenced in his or her presence shall not prevent continuing the trial to and including the return of the verdict." To determine whether a defendant voluntarily waived his right to be present at trial, the trial court must (1) make a sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary; (2) make a preliminary finding of voluntariness, when justified; and (3) afford the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed. Thomson, 123 Wash.2d at 881, 872 P.2d 1097.
A court looks to the totality of the circumstances to determine whether voluntary waiver has occurred. State v. Washington, 34 Wash.App. 410, 413, 661 P.2d 605 (1983). Because the right to be present at trial is a fundamental constitutional right, the court must indulge every reasonable presumption against the waiver of that right. State v. LaBelle, 18 Wash.App. 380, 389, 568 P.2d 808 (1977).
We recently addressed the issue of voluntary waiver due to involuntary incarceration in State v. Atherton, 106 Wash.App. 783, 24 P.3d 1123 (2001). In Atherton, the defendant appeared for the first three days of his trial, but did not appear in the courtroom the following Monday morning. After determining that defense counsel was not aware of Atherton's whereabouts, the trial court made a preliminary finding of voluntary absence, and permitted the trial to resume in Atherton's absence. Atherton, 106 Wash.App. at 786, 24 P.3d 1123. Later that day, during closing arguments, the court learned from defense counsel's office that Atherton was incarcerated at the King County Jail. Defense counsel moved for a mistrial, arguing that incarceration does not constitute voluntary absence. The court denied the motion. Id. The following day, Atherton was brought to court. Defense counsel explained that Atherton had been arrested on Sunday morning on unrelated charges and that Atherton had asked the jail to call the court on Monday morning. The trial court denied Atherton's renewed motion for a mistrial, stating that "it was allegedly by his own actions that he got picked up and there was some kind of duty on his part to inform his counsel and the court of his whereabouts[.]" Id. at 787, 24 P.3d 1123. At sentencing, Atherton told the trial court that he "had the PR lady call and leave a message on the judge's chambers' recorder and nobody came and got me for my trial." Id. Atherton also said that he had called his attorney. Id. The court did not retract its preliminary finding of voluntary waiver. Atherton appealed, arguing that an incarcerated defendant cannot voluntarily waive the right to be present at trial, and alternatively arguing that the facts in his case did not support a finding of voluntary waiver.
We declined to adopt a per se rule that an incarcerated defendant cannot voluntarily waive the right to be present at trial, preferring to allow the trial court to employ a factual inquiry into the circumstances surrounding the defendant's incarceration and to find voluntary waiver where appropriate. Id. at 788-89, 24 P.3d 1123. We also rejected the theory that failure to quash a warrant is a valid basis to find voluntary waiver, stating that "[a] waiver of the constitutional right to appear at trial should not be presumed unless the defendant's action or omission was clearly intended to result in his absence from a specific trial day." Id. at 789, 24 P.3d 1123. But we also held that "an incarcerated defendant has a duty to make reasonable efforts to inform the court of his situation.... If there is unrefuted evidence that the defendant was unable to call in a timely manner, or tried but failed to make contact, then the court must retract its preliminary finding of voluntary waiver." Id. at 790, 24 P.3d 1123. Applying these principles, we concluded that the record did not support the trial court's conclusion that Atherton voluntarily waived his right to be present at trial:
There is uncontroverted evidence in the record that Atherton made various unsuccessful attempts to contact the court and counsel. He said that he told the "PR lady" at the jail to contact the court, and *389 that he had tried to call the court and counsel. There was nothing in the record indicating what time Atherton tried to make these calls, whether he had access to a phone before his trial commenced on Monday morning, or whether he actually asked a court employee to make the calls for him. The court did not ask these questions. Instead, it assumed that Atherton's absence was voluntary because the court did not receive notice of his incarceration until later that morning. This was error.
Id. at 791, 24 P.3d 1123.
Here, the trial court also reasoned that Garza was voluntarily absent from trial because he had been incarcerated on an outstanding warrant. As the State properly concedes, Garza's failure to quash his bench warrant and his subsequent incarceration did not constitute a voluntary waiver of his right to be present at trial, in light of the rule we announced in Atherton.[1] Because Garza does not dispute that the trial court's preliminary finding of voluntary waiver was justified, the central issue in this case is whether Garza made a reasonable effort to notify the court of his incarceration.
The State does not challenge the veracity of Garza's claim that he asked the arresting officer to "notify King County to let them know that I can't make it in." Rather, the State argues that such a "vague and cryptic" request to the arresting officer was insufficient to qualify as a reasonable effort to notify the court of Garza's impending incarceration, particularly where there is no evidence that Garza attempted to call the court or counsel from jail and made no contact at all until two days after the trial was over. Garza counters that, given the presumption against waiver of the fundamental right to be present at trial, his statement to the police officer was sufficient.
We agree with the State that Garza failed to take reasonable steps to notify the court or counsel of his whereabouts. Garza's request to have the Lynnwood police officer "notify King County to let them know I can't make it in" was vague and cryptic. Garza did not specify who to call at King County or what the matter was about. But even if we assume that Garza reasonably believed that the officer understood his request or would spend the necessary time to find out where in King County Garza was supposed to be, it is uncontroverted that Garza made no attempt to call the court or counsel upon his release to see whether his message had been received or to find out whether he needed to show up at trial the following day. And even if we assume that Garza was not able to make phone calls from jail, he still could have called his counsel upon his release on the evening on June 19, or called the court or counsel on the following morning. The record indicates that Garza knew that his attorney had voice mail, and knew how to leave messages by voice mail. Instead, Garza made no further attempts to inform the court or his counsel of his whereabouts until three days following his release from incarceration. In contrast, Atherton's requests were much more specific, and Atherton persisted in his efforts until he finally succeeded in getting a message through to the court on the same day he was incarcerated.
Garza also argues that the State has the burden of proving that his efforts to contact the court were not reasonable, pointing to the well-established principle that courts indulge every reasonable presumption against the waiver of a fundamental constitutional right. LaBelle, 18 Wash.App. at 389, 568 P.2d 808; Hodges v. Easton, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169 (1882); State v. Williams, 87 Wash.2d 916, 921, 557 P.2d 1311 (1976); Little v. Rhay, 8 Wash.App. 725, 728, 509 P.2d 92 (1973). However, Garza misinterprets the application of the principle to the facts in this case. As the Thomson court explained:
We agree that the right to be present is of great importance. However, our current voluntary waiver approach amply protects that right. The 3-prong voluntariness inquiry ensures the court will examine the circumstances of the defendant's absence and conclude the defendant chose not to be present at the continuation *390 of the trial. The inquiry provides an opportunity for the defendant to explain his or her disappearance and rebut the finding of voluntary absence before the proceedings have been completed.
Thomson, 123 Wash.2d at 883, 872 P.2d 1097.
Under this test, when faced with a defendant's unexplained absence from trial, the court must sufficiently inquire into the circumstances of the defendant's disappearance before making a preliminary finding of voluntary absence. When such preliminary finding is appropriate, the burden shifts to the defendant to demonstrate that his or her absence was not voluntary. Where the defendant's absence was due to incarceration, the defendant must show that he or she made reasonable attempts to contact the court and counsel. As we explained in Atherton, the purpose of this rule is to ensure that an incarcerated defendant will not deliberately remain silent about his or her whereabouts and, in the event of a conviction, move for a new trial based on a claim of involuntary absence. Id. at 790, 24 P.3d 1123.
It is at this point in the proceedings that the presumption against waiver applies. In evaluating the defendant's explanation, the court must indulge every reasonable presumption against waiver of the right to be present. Rather than shifting the burden of proof to the State, the presumption simply ensures that the court will review the circumstances of the defendant's absence and attempts to contact the court in a generous light. For example, in Garza's case, we will indulge in the presumption that, even as cryptic and vague as his request to the arresting officer was, Garza reasonably thought the arresting officer would contact the proper people in King County, and that Garza was unable to call the King County court or counsel during the day he spent in jail in Snohomish County. However, the presumption against waiver does not free Garza from the burden of explaining why he did not call his counsel or the court within a reasonable time following his release from jail. Garza was incarcerated for fewer than twelve hours, yet he did not contact the court or counsel until three days after his release. The standard specifies that we must indulge every reasonable presumption against waiver. It would be manifestly unreasonable to assume that Garza's absence under these circumstances was involuntary. "One cannot indiscriminately obstruct the course of justice and then rely on constitutional safeguards to shield him from the legitimate consequences of his own wrongful act." LaBelle, 18 Wash. App. at 398, 568 P.2d 808.
For these reasons, we affirm the trial court's ruling denying Garza's motion for a new trial.
BAKER, J., and COX, J., concur.
NOTES
[1] We acknowledge that the trial court could not have known about this rule because Atherton was decided almost a year after the trial court's decision in Garza's case.