[No. 11138-5-III. Division Three. May 12, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT V. HAMMOND, *Appellant.*

*John B. Daly,* for appellant (appointed counsel for appeal).

*Andrew K. Miller, Prosecuting Attorney,* and *Carrie L. Runge, Deputy,* for respondent.

THOMPSON, J. — Robert Hammond appeals his conviction for indecent liberties. He contends he was denied his right to be present at trial and, thus, his right to confront the witnesses against him. Mr. Hammond also challenges two of the reasons found by the court to justify an exceptional sentence. We reverse and remand for trial.

On September 13, 1988, Mr. Hammond was charged with indecent liberties involving his then 11-year-old stepdaughter. On September 30, 1988, the court granted the State's motion for a continuance, and released Mr. Hammond on his own recognizance, conditioned on his remaining in Benton or Franklin County. On that same day, and in Mr. Hammond's presence, the court reset the trial date for October 31. Mr. Hammond violated the conditions of his release, and went to California to live with his parents.

On October 21, 1988, Mr. Hammond returned to Benton County for a pretrial conference. He then went back to California. On October 31, 1988, Mr. Hammond told defense counsel in a telephone conversation that he was still in California and had no money to pay for transportation to return to Washington for trial. He stated his father had a temporary job and might be able to loan him the amount needed. He asked if the trial could be postponed until November 15. Defense counsel and the court engaged in the following colloquy on the record:

MR. HUGILL: . . .
I told him when I talked to him, "The judge says the trial will begin on Wednesday [November 2], so don't expect a free trip courtesy of Benton County." . . .

. . . .
THE COURT: Why don't you go out and try to call him again.

MR. HUGILL: Okay. . . .

(Whereupon a short recess was taken, and proceedings further resumed as follows:)

. . . .

MR. HUGILL: . . . I couldn't get through to Mr. Hammond . . . so I called Connie [Mr. Hugill's secretary]. She got right through, 209-745-2269. That is his parents' number. He did pick up the phone, so there he is right there in Gault, California. . . .

And Mr. Hammond states as follows: He's still at home in California. . . . "I have $2.00 to my name. My folks have no money to give me, and I'm stone broke." . . . I did not give him any reason to indicate that his trial would not be beginning in his absence, . . .

. . . .

MR. EGGIMANN: Part of the reason why the State would like to proceed with the trial is not only does the State believe that his absence is voluntary, given the fact that he knew he was to remain in the area and did, in fact, show up here just ten days ago, but also because in the first place, the State had to issue a warrant for his arrest in order to get him up here in the first place. The warrant was issued back in February of 1988. His first appearance in this court was in August. The allegations concerned abuse that occurred three years ago. Already there's been an amazing time lapse, and the State is concerned with any further time lapse in this.

THE COURT: Well, I believe that his failure to appear is voluntary. . . .

So we are going to proceed without him and issue a bench warrant for his arrest. I'm going to explain to the jury simply that he has failed to appear . . ..

Mr. Hammond was tried in absentia and found guilty by a jury. He was not returned to Washington until 1990.

When Mr. Hammond was sentenced on October 12, 1990, the court made the following findings to support an exceptional sentence[1] of 81 months:

1. The victim was particularly vulnerable because the defendant was her stepfather and virtually the only father she had known.

2. The defendant was in a position of trust and confidence over the victim, being the caregiver for the victim when her mother was working.

3. The defendant abused the victim on a regular basis over a period of about seven (7) years.

4. The defendant threatened the victim with death to conceal the crime.

---

[1]The standard range was 21 to 27 months.

5. The defendant absconded and was a fugitive from justice even though he knew of the trial date.

At the sentencing hearing, the court noted Mr. Hammond had pleaded guilty to bail jumping and been sentenced to 6 months, to run concurrently with the indecent liberties conviction. The court continued:

The defendant has subverted the judicial process by concealing the crime, by absconding from the jurisdiction of the Court, and by remaining a fugitive from justice for almost two years.

. . . .

Now, the problem is that he's given six months for absconding for two years, and I don't consider that to be adequate at all. In fact, I think the appropriate sentence would be for him to be sentenced to an additional sentence of about the same length of time as he was under the status of being an absconder. That, plus the other aggravating factors, indicate to me that he should receive a sentence of three times the standard range of 27 months, 81 months.

In considering that, I considered the aggravating factors the prosecutor suggested; namely, the vulnerability of the victim, position of trust, and the constant abuse, as well as the nature of the abuse, which I didn't mention, which was certainly aggravated in and of itself, including ejaculating into her mouth, as I recall the evidence.

And I've added to that some period for absconding from the trial and absconding from the jurisdiction of the Court. I cannot put the precise amount of time on that. I suppose one could say in general he's getting a double sentence for the aggravating factors, and I tripled it for the absconding. I mean that's about as close as I can come to justifying the three-time business. In other words, doubled it for the aggravation that I mentioned, and added on another — not double it again — but 50 percent more, which is almost coincidental with the period of time he was gone; slightly more, I suppose.

The first issue on appeal is whether the trial of Mr. Hammond in absentia violated his constitutional rights to be present and to confront the witnesses against him.

■ The United States Supreme Court has held that a defendant who voluntarily absents himself *during* trial loses his right to be present. *Taylor v. United States*, 414 U.S. 17, 38 L. Ed. 2d 174, 94 S. Ct. 194 (1973). The leading case concern-

ing the propriety of *commencing* a trial in the defendant's absence, as opposed to merely *continuing* it, is *United States v. Tortora*, 464 F.2d 1202 (2d Cir.), *cert. denied*, 409 U.S. 1063 (1972). In *Tortora*, one of five defendants failed to appear and was tried in absentia. In affirming the conviction, the court held the deliberate absence of the defendant, who knew he stood accused in a criminal case and that trial would begin on a day certain, did not deprive the court of the power to begin the trial. *Tortora*, at 1208-09. Further, the defendant's conviction "complied with all the requisites of the Constitution". *Tortora*, at 1210.

However, the court in *Tortora* made clear that greater care is necessary in the case of a defendant who has failed to appear before the trial has commenced:

> We only hold that [the decision to proceed with trial] is within the discretion of the trial judge, to be utilized only in circumstances as extraordinary as those before us. Indeed, we would add that *this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant.* Whether the trial will proceed will depend upon the trial judge's determination of a complex of issues. He must weigh the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again particularly in multiple-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy.

(Italics ours.) *Tortora*, at 1210. The court noted: "It is difficult for us to conceive of any case where the exercise of this discretion would be appropriate other than a multiple-defendant case." *Tortora*, at 1210 n.7. *See also* 3 W. LaFave & J. Israel, *Criminal Procedure* § 23.2(b), at 7-8 (1984).

Here, Mr. Hammond was in telephone contact with his attorney and his whereabouts was known. It appears the court could have secured his presence within a reasonably short time by issuing a warrant for his arrest. Such a course of action would have minimized the prosecutor's concerns about the effect of delay upon the State's witnesses. Also,

Mr. Hammond was a single defendant. The inconveniences encountered in delaying a trial while securing the presence of one of multiple defendants were not present in this case. The fact Mr. Hammond's failure to appear for trial was deliberate and without excuse as noted by the dissent is not determinative. If it were, then trials routinely would be held without defendants present. While such a procedure might facilitate docket control, it also would endanger the commitment to due process which is a hallmark of a free society.

The cases relied upon by the State are distinguishable. *State v. LaBelle*, 18 Wn. App. 380, 568 P.2d 808 (1977) was a multiple-defendant case, like *Tortora*. Here, the court could have rescheduled Mr. Hammond's trial without impacting another defendant's right to a speedy trial or burdening the State with two trials. In *State v. Washington*, 34 Wn. App. 410, 661 P.2d 605, *remanded*, 100 Wn.2d 1016 (1983), *rev'd on other grounds on remand*, 36 Wn. App. 792, 677 P.2d 786, *review denied*, 101 Wn.2d 1015 (1984), the whereabouts of the absent defendant was not known. The court here was aware of Mr. Hammond's precise location. In *State v. Tacon*, 107 Ariz. 353, 488 P.2d 973 (1971), *cert. granted*, 407 U.S. 909 (1972), *cert. dismissed*, 410 U.S. 351 (1973), the trial court, in deciding to proceed without the defendant, relied in part upon the fact the government had been put to considerable expense in bringing a witness from out of state, along with two federal marshals from the federal reformatory where the witness was incarcerated. *Tacon*, at 355. Witness expenses were not a factor in the decision to proceed with Mr. Hammond's trial.

We therefore hold the trial court abused its discretion when it proceeded with the trial. Mr. Hammond's constitutional interests outweighed any public interest in commencing trial on the scheduled date. *Tortora*. We reverse his conviction and remand for a new trial.

The second issue on appeal is whether the court erred in imposing an exceptional sentence. Mr. Hammond assigns error to the following reasons given by the court in support

thereof: (1) the victim was particularly vulnerable because Mr. Hammond was her stepfather, and (2) Mr. Hammond's 2-year absence from the court's jurisdiction manifested an intent to subvert the judicial process. We address these alleged errors because they may arise on remand if Mr. Hammond is convicted in a new trial.

Mr. Hammond contends proof the defendant is in a position of authority over the victim is one of the elements of indecent liberties. Thus, the fact Mr. Hammond was the victim's stepfather and the "only father she had known" had already been considered by the Legislature in setting the standard range for this offense.

However, Mr. Hammond was charged under former RCW 9A.44.100(1)(b), which at the time read:

(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

. . . .

(b) When the other person is less than fourteen years of age; . . .

Abuse of a position of authority is *not* an element of the charged offense. It is only an element of former RCW 9A.44-.100(1)(c) — when the victim is less than 16 years old "and the perpetrator is more than forty-eight months older . . . and is in a position of authority over the person . . .". Abuse of a position of trust, such as a stepparent relationship, is a factor justifying imposition of an exceptional sentence in sexual offender cases. *See State v. Grewe*, 117 Wn.2d 211, 216, 813 P.2d 1238 (1991).

Mr. Hammond also contends the court improperly relied upon his abscond status to enhance his sentence. The trial court cited *State v. Cook*, 52 Wn. App. 416, 760 P.2d 964 (1988). There, the sentencing court imposed an exceptional sentence for malicious mischief and custodial assault. It based the sentence on the fact the defendant had committed the custodial assault while awaiting trial on the malicious mischief charge, thus evidencing an " 'absolute disregard for law and order' ". *Cook*, at 418. The defendant argued that

the Legislature anticipated commission of the crime of custodial assault by persons awaiting trial on other charges and factored this into its calculation of the standard range. The court disagreed, holding at page 423:

> The sentencing court was drawing a finer distinction; distinguishing between the convicted defendant who is in detention, but knows the scope of punishment or consequences of his action, and the defendant awaiting trial who does not yet know his fate and, therefore, should appreciate that any infraction could result in a far more serious punishment. This evidence of contempt for the criminal justice process is corroborating evidence that indicates dangerousness.

■ In our view, inferences arising from a defendant's conviction for a separate crime do not justify an exceptional sentence for a conviction currently before a court for sentencing. Nevertheless, *Cook* is distinguishable from Mr. Hammond's case on its facts. Here, the sentencing court considered the fact Mr. Hammond had pleaded guilty to bail jumping and received a 6-month standard range sentence. Bail jumping includes as an element that the defendant knowingly failed to appear as required in court. *See* RCW 9A.76.170. It is this very element that the sentencing court relied upon to conclude Mr. Hammond subverted the criminal justice system. Since the Legislature already considered this element in assigning a standard range sentence for bail jumping, the court cannot use it to justify an exceptional sentence for indecent liberties.

Reversed and remanded.

SHIELDS, C.J., concurs.

MUNSON, J. (dissenting) — When Mr. Hammond appeared in Benton County Superior Court on September 13, 1988, an order establishing conditions of release pending trial pursuant to CrR 3.2 was entered. That order set bail in the amount of $2,500, which could be secured by bond or posting of cash; he was to contact his attorney every Thursday; to make all court appearances; travel was restricted to Benton

and Franklin Counties; his residence was restricted to the address "set out below"; and he was to have no contact with the complaining witness.

Mr. Hammond agreed to those conditions by his signature and date of September 23, 1988, giving the address of 1101 West Gribble, Richland. As noted on the form, he was given the quadruplicate copy. The record reflects he was present in court on September 30, 1988, when the State's request for a continuance was granted and the court reset his trial date for October 31, 1988; he was subsequently released. He returned for a pretrial conference on October 21, 1988. There is nothing in the record of his lack of funds. He departed thereafter for his parents' home in Gault, California.

Mr. Hammond violated the conditional terms of his release by traveling to California. He notified his attorney of his unavailability for trial on October 31, 1988, in that he was in California with insufficient funds to return for trial. There is no indication that Mr. Hammond traveled to California other than under his own free will. Apparently, when contacted telephonically on October 31, after counsel advised the court of Mr. Hammond's inability to return for trial, he was told the trial would begin on Wednesday, November 2, 1988.

I agree that Mr. Hammond could not be sentenced to an exceptional sentence based on his absconding, having already been sentenced for bail jumping.

However, there was no objection to the trial date of October 31 at the time the continuance was granted, nor at the pretrial conference on October 21; there is no indication that Mr. Hammond would have been unable to attend had he stayed in Richland as the conditional order required; there is no showing he had no means of support while remaining in Benton and Franklin Counties; he had money or access to sufficient money to make bail and to travel to California; he had no objection to the trial date of October 31. He remained a fugitive for nearly 2 years until he was back in the state and sentenced. There is no assurance Mr. Hammond would have returned by November 15, 1988, the

date to which he requested trial be continued. Had he reappeared and submitted to the court's jurisdiction relatively close to the trial date, I might agree with the majority, but not after an absence of almost 2 years. As noted, the act with which he was charged had occurred in 1985; his first court appearance was in August 1988. The "tail is wagging the dog" in this case. Mr. Hammond will not be heard to complain when he voluntarily failed to appear after violating the conditional order of his release.

I would affirm the conviction and the exceptional sentence but reject the additional time based on his having absconded the jurisdiction of the court. He had already been convicted for that misconduct.

Review granted at 120 Wn.2d 1001 (1992).