[No. 28783-4-I.   Division One.   June 7, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. CHRISTOPHER NOEL THOMSON, *Appellant.*

*Andrew P. Stanton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa L. Fricke, Senior Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

AGID, J. — Christopher Noel Thomson appeals the judgment and sentence entered against him for one count of delivery of cocaine. Thomson argues that the trial court erred by conducting the trial in his absence and that the evidence was insufficient to support his conviction because he was not directly identified in court. We affirm.

On November 1, 1990, Christopher Thomson and Brock Allen Rasmussen were charged by information with one count of delivery of cocaine. On April 3, 1991, Thomson appeared in court with his counsel. The minute entry for that day shows the notation "Trial" and also lists several pretrial motions that the court heard. The following day, April 4, Thomson's counsel, Rasmussen's counsel, and the prosecutor again argued

several motions to the trial court. Thomson did not initially appear in court that morning but called the court to say he would be late due to car trouble. He arrived sometime thereafter. Before the court recessed at noon, the following colloquy occurred:

THE COURT: . . . I wish that more had been accomplished. Mr. Thomson, I don't intend to manage this case punitively because you were late this morning, but I sure want you to redouble your efforts to make sure that the terrific costs of keeping everybody waiting in the courtroom . . . don't reoccur.

MR. THOMSON: I understand, Your Honor.

THE COURT: I trust everybody will do it, and I think your arrival signifies you weren't just trying to absent yourself. But if you could make sure your arrangements are such that we can get underway when we want, we'll try to avoid delays all around.

Later that afternoon, jury selection began.[1] At the end of the day, the proceedings were continued until April 8, 1991.

On the morning of April 8, Thomson did not appear in court as scheduled. As Thomson's attorney stated for the record:

This morning I handed a note up by the bailiff, with the time indicated 8:55. I believe Mr. Thomson had shortly contacted my office before that.

The entire information that I have is through my secretary, who took the message. Mr. Thomson indicated he knew he was suppose[d] to be in Court this morning, and that he had a medical emergency. He did not leave a further description of what the emergency was, however. He said that he would not be able to make it to Court, and was not at the number where I could contact him.

Counsel also said he believed that Thomson had indicated he would not be in court at all that day. After the prosecutor requested a bench warrant for Thomson's arrest, defense counsel said:

In response to that, Your Honor, the Court is aware that my client contacted this Court on Thursday, indicating car trouble,

---

[1]The report of proceedings does not indicate how much was accomplished that day. It merely states: "(Jury selection began.)". However, the minute entries of April 4 indicate that on that afternoon "[t]he impaneling of the jury [was] commenced."

and got in here. So that tends to indicate to me that he did have car problems, and made every effort to get here by some other means of transportation.

The only information that we have is that it is not a voluntary absence. He described a medical emergency. . . . We don't have any basis to think that this is a voluntary absence.

Secondly, Your Honor, the trial has not commenced. We have gone through pretrial motions. We have not selected a jury. I haven't done research on this, but I believe that State versus Campbell talks about the fact that my client has to be here during jury selection, particularly since we do not think, I submit to the Court, we have no information contrary to this voluntary absence. My client's due process rights are going to be violated if we go forward and pick a jury without his presence being here, because as the Court is aware, my client can certainly give me his intention as to who should or should not be sitting on the jury panel.

So I submit that what we need to do in this case is recess. I would so move at this time until Mr. Thomson can make his whereabouts known and can be present in Court.

Counsel for Thomson's codefendant indicated that he was concerned about continuing the trial because his client was in custody and his speedy trial date had expired. The prosecutor pointed out that Thomson had failed to call the court that morning to explain the medical emergency even though he had called the court the previous week when he was going to be late due to car trouble. The court recessed in order to review the relevant law. During recess, Thomson's counsel learned that Thomson's mother, with whom Thomson lived, had not heard from him and knew nothing of his whereabouts.

The court decided as follows:

It seems to me from what has been said, and from the absence of other contact from the defendant, and the nature of the message that he left with [defense counsel's] secretary, that the Court can and ought to find that he has absented himself from the proceedings, and that we ought to go forward with the trial. That would mean the selection of the jury. If he showed up, we could make a decision as to whether or not we wanted to select another jury or continue on with the same — or change in some way the decision come 1:30.

But I think we ought not to waste this opportunity to continue the selection of the jury, given the reports that we have: the failure of the defendant to either leave a message with his mother, with whom he lives, in a way that could be communi-

cated to give us the reasons for his absence; the failure to leave a suitable message at his lawyer's office; and the failure to contact the Court personally, all indicate to me intentions not to meet his responsibilities to the Court.

Should it turn out that he has a medical condition that has excused his dealing with the Court or his lawyer more effectively, I think we're not disadvantaged from dealing with that as circumstances appear at that time.

Meantime, we can go forward with jury selection and not lose the time of those jurors, . . . and not put Mr. Rasmussen in a position of having to serve too long in jail without having this trial go forward.

The court signed a bench warrant for Thomson's arrest and excused "both groups of jurors" until 1:30 that afternoon.

When court reconvened, Thomson had neither appeared nor contacted anyone. The trial court concluded that it would go forward with the jury selection and trial

with the Court findings as indicated this morning and confirmed by the passage of the additional three and a half hours and the continued absence of the defendant, and the absence of some additional explanations as to his whereabouts. That these findings waive his right to be present is a compelling one, so I am going to direct that we go forward with the jury selection at this time, and presumably the balance of the trial.

Thomson's counsel objected to the court's ruling and again asked the court to recess until Thomson was located. The court denied that motion and voir dire proceeded.

The next day, April 9, Thomson again did not appear and Thomson's mother still had not heard from him. The trial court denied defense counsel's motion for a continuance. Counsel made their opening statements and the trial proceeded.

Detective Chris Hurst of the Black Diamond Police Department testified that he and Officers Esping and Luther were working on a narcotics case in Kent on June 29, 1990. They drove their van to the parking lot of a tavern called the Moonraker in an area known for drug activity. As the undercover officers got out of the van, Rasmussen approached them and asked them if they had any drugs. The officers said no but asked him if he knew where they could get some. Rasmussen said he knew someone who soon would be getting 4 ounces of cocaine and indicated he would lead them to that person.

Rasmussen drove to Andy's Pub in Kent, and the officers followed. He contacted a man who was walking around in the parking lot. Both men returned to Rasmussen's car, got inside, and talked. Rasmussen returned to the officers and told them that the other man could supply them with cocaine and would be willing to let them sample one-half gram for $45. The other man then left Rasmussen's car, got into a different car, and parked it in front of the police van. The officers gave Rasmussen a $50 bill and he immediately went to the car where the other man was waiting. Rasmussen reached into that car and then walked back over to the van with what appeared to be one-half gram of cocaine. He gave it to the officers and asked for $300 as a down payment on a larger quantity. The officers refused and, at that point, decided to arrest the two men. Officer Hurst arrested the man in the car and verified "[t]hrough an interview with him" that the man's name was Thomson. Hurst put Thomson in the passenger side of the van which was where the officers later found the $50 bill. During cross examination, Thomson's counsel asked Officer Hurst if he had "put my client, Mr. Thomson in handcuffs", and Hurst testified that he had. In addition, Officer Esping testified that the person to whom he referred as Mr. Thomson had been present during a pretrial hearing but was not in court during the trial.

On the day the jury found Thomson guilty, April 9, Thomson called his attorney and learned of the verdict. He then turned himself in to the police. At the sentencing hearing on July 8, 1991, Thomson did not explain his absences on April 8 and 9. He simply apologized for not appearing on those days. Thomson now appeals the judgment and sentence.[2]

---

[2]On December 4, 1992, a commissioner of this court granted a motion on the merits and affirmed the trial court's judgment and sentence. Thomson filed a motion to modify that ruling, arguing that the commissioner did not analyze all of the necessary factors regarding an absent defendant as required by *United States v. Tortora*, 464 F.2d 1202 (2d Cir.), *cert. denied*, 409 U.S. 1063 (1972), which was adopted by Division Three in *State v. Hammond*, 65 Wn. App. 585, 829 P.2d 212, *review granted*, 120 Wn.2d 1001 (1992). On March 5, 1993, this court granted Thomson's motion to modify in light of *Crosby v. United States*, ___ U.S. ___, 122 L. Ed. 2d 25, 113 S. Ct. 748 (1993), and ordered the parties to

We initially consider whether the trial court erred by concluding that Thomson was voluntarily absent on April 8 and 9 and by conducting the trial without him. Thomson argues that the trial court erred because it did not adequately inquire about the cause of his absence, and no evidence suggested that his absence was voluntary. In his motion to modify the commissioner's ruling, Thomson also contends that the commissioner erred by failing to consider the "complex of issues" that, according to *United States v. Tortora*, 464 F.2d 1202 (2d Cir.), *cert. denied*, 409 U.S. 1063, 34 L. Ed. 2d 516, 93 S. Ct. 554 (1972), must be analyzed by a reviewing court before deciding whether a criminal trial was properly held in a defendant's absence.

In Washington criminal prosecutions, "the accused shall have the right to appear and defend in person, or by counsel . . . [and] to meet the witnesses against him face to face". Const. art. 1, § 22 (amend. 10). In addition, CrR 3.4 reads in part:

> **(a) When Necessary.** The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.
> **(b) Effect of Voluntary Absence.** In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. . . .

■ The right to be present at trial may be waived so long as the waiver is voluntary and involves an intentional relinquishment of a known right. *State v. Washington*, 34 Wn. App. 410, 413, 661 P.2d 605 (1983). In *State v. LaBelle*, 18 Wn. App. 380, 397-98, 568 P.2d 808 (1977), this court explained the rationale for the waiver rule:

> [W]hen a criminal defendant is presented at arraignment, enters a plea, receives actual notice of the time, date and place of the trial, deliberately absconds without a compelling reason, is represented by counsel at trial, and never offers a satisfactory expla-

file supplemental briefs on the issue of when a trial has begun for purposes of CrR 3.4.

nation for his absence, a trial court may find such actions on the part of the defendant to amount to a knowing and voluntary waiver of his right to be present and may conduct the trial in his absence. Such an action by the trial court will not be a material departure from the spirit of the right, for the protection afforded the accused in the right to confrontation need not be adhered to blindly regardless of the cost to society. One cannot indiscriminately obstruct the course of justice and then rely on constitutional safeguards to shield him from the legitimate consequences of his own wrongful act.

(Citations omitted.) 18 Wn. App. at 397-98.

Voluntariness will be determined by the totality of the circumstances, and in making that determination courts shall:

(1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) [make] a preliminary finding of voluntariness (when justified), and (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed.

34 Wn. App. at 414 (quoting *State v. Staples*, 354 A.2d 771, 776 (Me. 1976)). Here, the trial court did inquire into Thomson's absence by questioning his attorney who informed the court of Thomson's vague message about having a "medical emergency" and the fact that Thomson's mother, with whom Thomson lived, had no knowledge of where he was. The court also issued a bench warrant on April 8 for Thomson's arrest and waited 3½ hours before proceeding. There was nothing more the court could have done to inquire about Thomson's absence.

Further, the record supports the inference, and there is no evidence or argument to the contrary, that Thomson was present at arraignment and personally entered his plea of not guilty. *See LaBelle*, 18 Wn. App. at 397-98. Thomson appeared when his attorney argued several motions on April 3 and 4, and he does not contend he was absent on the afternoon of April 4 when impaneling of the jury began. In addition, the record shows that Thomson had actual notice of the time, date, and place of his trial because he appeared on April 3, 1991, when the case was called to trial, and he called his attorney's office early on the morning of April 8 to

report that he would not appear in court that day because of the unspecified medical emergency. Thus, the trial court properly concluded that Thomson's absence was a knowing and voluntary waiver of his right to be present during his trial. *See Washington*, 34 Wn. App. at 414; *LaBelle*, 18 Wn. App. at 397-98. That conclusion was further supported by Thomson's failure during sentencing to make any attempt to explain his alleged emergency.

Contrary to Thomson's argument in his motion to modify, *State v. Hammond*, 65 Wn. App. 585, 829 P.2d 212, *review granted*, 120 Wn.2d 1001 (1992) does not require the opposite conclusion and, in any event, we decline to follow that opinion. Hammond had been present in court when the trial court reset the trial date for October 31. On October 21, Hammond appeared in court for a pretrial conference. However, he failed to appear for trial on October 31. Trial proceeded and Hammond was found guilty. *Hammond*, 65 Wn. App. at 586-87. The Court of Appeals, Division Three, relied on *Tortora* to hold that the trial court abused its discretion by proceeding to trial in the defendant's absence and that the defendant's "constitutional interests outweighed any public interest in commencing trial on the scheduled date." *Hammond*, 65 Wn. App. at 590.

In *Tortora*, the Second Circuit upheld the conviction of a defendant who voluntarily failed to appear on the day his trial commenced and jury selection began. The *Tortora* court set forth the "complex of issues" formulation on which *Hammond* relied as follows:

> We only hold that [the decision to proceed with trial] is within the discretion of the trial judge, to be utilized only in circumstances as extraordinary as those before us [the case involved difficult scheduling problems]. Indeed, we would add that *this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant.* Whether the trial will proceed will depend upon the trial judge's determination of a complex of issues. He must weigh the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again

particularly in multiple-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy.

65 Wn. App. at 589 (quoting *Tortora*, 464 F.2d at 1210). In holding that the trial court had abused its discretion, the *Hammond* court considered that Hammond had no codefendants and the trial court had been informed of Hammond's whereabouts in California and could have issued a bench warrant to secure his presence in court.

In contrast, the present case involves a codefendant who was in custody and whose speedy trial date had already expired. Thomson's whereabouts were not known to anyone, and the court issued a bench warrant that failed to produce him. There was no way for the trial court to determine when, if ever, Thomson might appear or be located. Moreover, the evidence clearly overlapped and, although no witnesses were in "substantial jeopardy" (*see Tortora*, 464 F.2d at 1210), the State's witnesses were police officers whose time spent at two separate trials would have placed a burden on the police force that would not exist with a single trial. On its facts, *Hammond* is readily distinguishable from this case and, regardless, *Tortora*'s "complex of issues" analysis has no further validity in light of *Crosby v. United States*, ___ U.S. ___, 122 L. Ed. 2d 25, 113 S. Ct. 748 (1993).[3]

In *Crosby*, the United States Supreme Court held that Federal Rule of Criminal Procedure 43, the federal counterpart to CrR 3.4, "prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial", as opposed to a defendant who voluntarily becomes absent after trial has begun.[4] *Crosby*, 113 S. Ct. at 752, 753. The Court reasoned that it is less costly to postpone a trial before it begins

---

[3] We note that Thomson's appellate counsel indicated during oral argument that our Supreme Court has granted review in *Hammond* and that defense counsel in that case would be filing a supplemental brief addressing *Crosby*.

[4] Fed. R. Crim. P. 43 reads in part:
" '(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the

than after it is already under way and that the defendant's "initial presence" assures that any later absence resulted from a knowing waiver. 113 S. Ct. at 752. It also concluded that a "clear line" rule would prevent a defendant from "gambling on an acquittal knowing that he can terminate the trial [at any time] if it seems that the verdict will go against him". 113 S. Ct. at 752, 753. While, in the context of interpreting our state's constitution and rules of criminal procedure, we are not bound to follow the opinion of the United States Supreme Court, we find *Crosby* persuasive.

The core issue in continuing a trial in absentia is whether the defendant made a knowing and voluntary choice to absent himself or herself from trial. As *Crosby* noted, once trial has begun in the defendant's presence, there can be little doubt under circumstances like those present in this case that the defendant's subsequent absence was knowing and voluntary. *See Crosby*, 113 S. Ct. at 753. Thus, we must decide, for purposes of CrR 3.4, the point at which trial begins.[5]

■ The language of CrR 3.4 itself offers guidance as to what marks the beginning of trial:

> The defendant shall be present at the arraignment, *at every stage of the trial including the empaneling of the jury and the return of the verdict*, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.

(Italics ours.) CrR 3.4(a). The wording of the rule establishes that the court considered trials as events which begin when

---

jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

" '(b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

" '(1) is voluntarily absent after the trial has commenced. . . .' " *Crosby*, 113 S. Ct. at 751.

[5]Although the parties argued the case under both the Washington.Constitution and the criminal rule, the protection given defendants by CrR 3.4 appears to be coextensive with the constitutional right to "appear and defend in person". We will therefore confine our discussion to the criminal rule.

the jury is impaneled and end when the verdict is returned. Arraignment and entering a plea precede trial, while sentencing follows trial. That demarcation is logical because, when the jury panel is sworn for voir dire, the defendant is given an unambiguous and readily discernible sign that trial is beginning and he or she will have the opportunity to participate in jury selection. While other events that typically occur before or contemporaneously with the swearing of the jury panel, such as pretrial motions heard on the day of trial, could serve to indicate the start of trial, the facts of this case do not require us to explore those possibilities. Thus, we hold that for purposes of CrR 3.4 the beginning of trial occurs, at the latest, when the jury panel is sworn for voir dire and before any questioning begins.[6]

Here, Thomson was present at the beginning of trial because he was in court on the afternoon of April 4 when the jury was sworn and impaneling began. As discussed earlier, the evidence also clearly shows that Thomson made a knowing and voluntary decision to absent himself after trial began. Thus, the trial court properly proceeded with trial because Thomson's absence was voluntary and he left after trial had already begun.

The second issue Thomson raises is whether the evidence was sufficient to prove his identity. He contends that because he was not present in the courtroom during his trial, the State failed to prove beyond a reasonable doubt his identity as the person the police arrested.

■ The identity of a criminal defendant and his presence at the scene of the crime charged must be proved beyond a reasonable doubt. *State v. Johnson*, 19 Wn. App. 200, 204, 574 P.2d 741 (1978). The standard of review for whether a guilty verdict is supported by the evidence is whether, view-

---

[6]It is unnecessary to decide whether there could be facts which would support a finding of a voluntary and knowing waiver of the right to be present justifying the court in proceeding in absentia even if the defendant were absent at the commencement of voir dire. For example, immediately prior to trial the defendant writes a letter to his attorney and says, "I won't appear at trial Monday. I am taking off for Brazil. Let me know how things turn out. Thanks. The defendant."

ing the record in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 222, 616 P.2d 628 (1980). When a party challenges the sufficiency of the evidence, he or she admits the truth of the evidence presented and all reasonable inferences therefrom. *State v. Gear*, 30 Wn. App. 307, 310, 633 P.2d 930, *review denied*, 96 Wn.2d 1021 (1981).

Here, the evidence shows that Officers Hurst and Esping both identified Rasmussen as the man who originally approached them in the Moonraker parking lot. They also testified that Rasmussen contacted an individual who could supply them with cocaine and give them a sample for $45. After the officers gave Rasmussen a $50 bill, they saw him exchange something with this same man, and Rasmussen then delivered the sample of cocaine to the officers. Upon arresting the other man, Officer Hurst verified that his name was Thomson. They later found the $50 in the van where Thomson had been held. Further, Thomson's counsel asked Officer Hurst if he had put his client, Thomson, in handcuffs at the scene, and the officer said yes. Finally, Officer Esping testified that the man he knew to be defendant Thomson had been present during a pretrial hearing but was not present in court during trial.

Viewing the record in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant Thomson was the man whom the officers arrested at the scene with Rasmussen. *Green*, 94 Wn.2d at 222.

The judgment and sentence of the trial court are affirmed.

WEBSTER, C.J., and FORREST, J., concur.

Review granted at 122 Wn.2d 1022 (1993).