IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36058-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID ROCAEL LOPEZ-SANCHEZ, | ) | |
| AKA DAVID ROCHEL LOPEZ, DAVID | ) | |
| ROCHEL SANCHEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — David Rocael Lopez-Sanchez appeals his convictions

for first degree burglary, fourth degree assault, and malicious mischief, all with a

domestic violence enhancement.[1]  He argues: (1) the trial court erred when denying his

motion for mistrial after the State repeatedly elicited prior bad act evidence, (2) the trial

court violated the real facts doctrine at sentencing, and (3) the evidence is insufficient to

sustain his conviction.  We affirm.

_____

[1] He does not appeal his bail-jumping conviction, so we do not discuss this charge
or the facts giving rise to it.

FACTS

Lopez-Sanchez and Beatriz Jimenez dated and lived together for several years before she asked him to move out of her apartment. Months later, Lopez-Sanchez called Jimenez and asked if he could come to her apartment. She said that she would not be at her apartment for a while, but she would leave it unlocked so he could let himself in.

When Jimenez returned to her apartment, she saw Lopez-Sanchez in her apartment drinking. As they were talking, Lopez-Sanchez kept receiving phone calls from his girlfriend. Jimenez became frustrated and disappointed, and told Lopez-Sanchez to leave. The two began to argue, and Jimenez became fearful because Lopez-Sanchez had been drinking and was very upset. Lopez-Sanchez told her he would get his car keys and leave, but during a search for the keys, the two continued to argue. He could not find his keys and eventually stepped outside. As he left, Jimenez called him a derogatory term. She immediately feared that the term she used would cause him to attack her, so she locked the door.

Shortly after, Lopez-Sanchez began knocking on the door loudly and repeatedly asked for his keys. After a couple of minutes, he then started to hit the door with great force and yell for her to let him in. He eventually kicked the locked door open and

entered.  He ran angrily toward Jimenez and struck her multiple times with his fist and foot.  Jimenez escaped and ran out of her apartment for help.

She approached nearby maintenance workers and sought their help.  They called law enforcement.  Law enforcement arrived and investigated, but Lopez-Sanchez had left. Witnesses described Jimenez as hysterical and upset.  The next business day, Jimenez applied for a protection order.  Law enforcement later arrested Lopez-Sanchez.

The State charged Lopez-Sanchez with first degree burglary, fourth degree assault, and third degree malicious mischief, all with a domestic violence component.  Prior to trial, Lopez-Sanchez moved in limine to exclude evidence of prior bad acts of domestic violence.  The court granted his motion.

Both Lopez-Sanchez and Jimenez are monolingual and used interpreters throughout trial.  The State called Jimenez as a witness.  Lopez-Sanchez did not object when Jimenez testified that he was a "heavy drinker."  Report of Proceedings (RP) at 80. Shortly after, the State asked if the relationship had any issues, and Jimenez replied, "[c]onstant aggression against myself."  RP at 81.  Lopez-Sanchez did not object. Jimenez testified that she ended their relationship because "a situation came up where I thought I won't tolerate any more abuse or any more aggression, no more."  RP at 82-83.

3

At this point, Lopez-Sanchez asked the court to excuse the jury and objected to the State eliciting the above evidence. The court noted that eliciting testimony about abuse and aggression violated its ruling. The State conferred with Jimenez to remind her not to go into prior acts of abuse or aggression. Lopez-Sanchez asked the court for a curative instruction for the jury to disregard any answers about abuse or aggression. When the jury returned, the court stated:

> Ladies and gentlemen of the jury, while you were out, there was an objection to the answer that was provided by [Jimenez], indicating, quote, "I would not tolerate the abuse any more." I'm going to provide you what I refer to as a curative instruction. You are to disregard that reference or statement by [Jimenez].
> It is stricken from the record.

RP at 88-89.

The State's questions then began to focus on the event giving rise to the charges. Jimenez explained that Lopez-Sanchez came to her apartment that day to talk, but she asked him to leave after he kept getting calls from his girlfriend. She testified he began to get very upset, and that she knew he had been drinking. Jimenez testified that she called him "a bad word" as she was closing and locking the door, and the moment she called him the bad word, she knew "his reaction was going to be very aggressive, and I knew that he would assault me." RP at 97. Lopez-Sanchez objected based on speculation and argued that Jimenez could not know his state of mind. The court sustained the objection

4

and struck that part of her testimony. The State then asked Jiminez whether she was willing to let Lopez-Sanchez back into her apartment. She responded, "Not after I told him. Not after I told him what I told him because I knew he would hit me." RP at 100.

Lopez-Sanchez asked the court to excuse the jury and moved for a mistrial based on the repeated answers that violated the court's order in limine. The court heard argument from both parties. The court determined that the statement that Jimenez knew Lopez-Sanchez would hit her was not in reference to any prior bad act, but was because of the derogatory term that she had called him. The court therefore did not grant Lopez-Sanchez's mistrial request.

Lopez-Sanchez asked the court to give the jury a limiting instruction that the statement, "I knew he would hit me" referred back to the bad name used by Jimenez. When the jury returned, the court instructed the jury to consider Jimenez's statement as relating only to the fact she had just called him a bad name.

After the parties submitted evidence and gave closing arguments, the jury deliberated. The jury returned a verdict of guilty on all charges, all with special verdict findings of domestic violence.

At sentencing, the State asked the court to merge the burglary and assault convictions, to calculate Lopez-Sanchez's offender score as 1 with a standard range of 21

to 27 months, and to impose a 100-year domestic violence no-contact order protecting

Jimenez.  Lopez-Sanchez agreed with the State's merger analysis and offender score

calculation, and asked for the lowest end of the standard range.  He did not object to the

no-contact order.

The court asked the State why Jimenez was not present, and if she had spoken with

the State about Lopez-Sanchez's sentence.  The following discussion occurred:

> [THE STATE]:  . . .  As the Court probably could intuit to some
> extent, she was on board with the prosecution.  She felt disrespected by the
> defendant during times in trial.  Apparently he was making faces at her,
> shaking his head.  I didn't view any of that.
> THE COURT:  I didn't see that myself.
> [THE STATE]:  So I do know that this was something that was a
> great burden on her.  And so I do know that she was happy with the result
> of this trial.  I don't have her specific information from her as to what
> particular type of amount of time she would like to see.  I do know that the
> no contact order has always been a very important piece for her.

RP at 533.

The court imposed a 21 month sentence as Lopez-Sanchez requested, and a 100

year domestic violence no-contact order.

Lopez-Sanchez timely appealed.

No. 36058-0-III
*State v. Lopez-Sanchez*


ANALYSIS

A.    MOTION FOR MISTRIAL

Lopez-Sanchez contends the trial court abused its discretion when it denied his

mistrial motion.  He argues Jimenez's testimony repeatedly violated the order in limine

and amounted to a serious irregularity that requires a new trial.  We disagree.

This court reviews a denial of a mistrial motion for abuse of discretion, finding

such abuse only if "'no reasonable judge would have reached the same conclusion.'"

*State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012) (internal quotation marks

omitted) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).  When

inadmissible testimony is put before the jury, the trial court should declare a mistrial if the

irregularity, in light of all of the evidence in the trial, so tainted the proceedings that the

defendant was deprived of a fair trial.  *State v. Weber*, 99 Wn.2d 158, 164, 659 P.2d 1102

(1983).  The trial court is in the best position to determine the prejudice of a statement.

*State v. Thompson*, 90 Wn. App. 41, 45-46, 950 P.2d 977 (1998).

A mistrial is proper if "the defendant has been so prejudiced that nothing short of a

new trial can ensure that the defendant will be fairly tried."  *Emery*, 174 Wn.2d at 765.  A

trial irregularity prejudices a defendant's fair trial rights if it poses a "substantial

likelihood" of affecting the jury's verdict.  *State v. Gamble*, 168 Wn.2d 161, 177, 225

7

P.3d 973 (2010).  This analysis depends on: (1) the seriousness of the irregularity,

(2) whether the statement was cumulative of evidence properly admitted, and (3) whether

the irregularity could be cured by an instruction.  *State v. Perez-Valdez*, 172 Wn.2d 808,

818, 265 P.3d 853 (2011).

Lopez-Sanchez analogizes his case to *State v. Escalona*, 49 Wn. App. 251, 742

P.2d 190 (1987).  In that case, the defendant was charged with second degree assault with

a deadly weapon, a knife.  *Id*. at 252.  He successfully moved in limine to exclude

evidence of a prior conviction of the exact same crime.  *Id*.  At trial, the victim violated

the court's ruling when at one point he testified that he knew the defendant "'already has

a record and had stabbed someone.'"  *Id*. at 253.  The defendant requested a mistrial.  *Id.*

 The trial court denied the defendant's request, and instead chose to instruct the jury to

disregard the victim's answer.  *Id*.  On appeal, Division One of this court analyzed the

mistrial issue and reversed.  *Id.* at 255-57.  The court reasoned that the irregularity was

extremely serious because the improper evidence related to the same type of misconduct

as the charged crime.  *Id*. at 255.  The court determined that the curative instruction was

ineffective because a jury would be unlikely to disregard testimony that the defendant had

been convicted of the same type of crime.  *Id*. at 256.

The State contends the better comparison is *State v. Condon*, 72 Wn. App. 638, 865 P.2d 521 (1993). In that case, the trial court granted a motion in limine to exclude references that the defendant, charged with murder, had spent time in jail. *Id.* at 648. A witness testified twice that the defendant had either been in jail or called her from jail. *Id.* The defense sought a mistrial after the second instance. *Id.* The court denied the defendant's motion, but instructed the jury to disregard the statements. *Id.* The jury found the defendant guilty of murder. *Id.* at 641. On appeal, the defendant cited *Escalona* and argued that the trial court erred when it denied his mistrial motion. Division One disagreed and distinguished *Escalona*. The court noted that spending time in jail was much more ambiguous than committing an identical crime, and jail did not indicate a propensity for murder or even a serious crime. *Id.* at 649.

*Condon* is more applicable to this case than *Escalona*. As noted, Lopez-Sanchez successfully moved the court to exclude evidence of prior bad acts of prior domestic violence. Jimenez testified that her relationship with Lopez-Sanchez was marked with "[c]onstant aggression against myself," and that she ended their relationship because she would not tolerate "any more abuse or any more aggression." These comments, although improper, were sufficiently vague that they did not necessarily imply prior assaults. Abuse or aggression can be verbal or emotional.

9

Later in her testimony, Jimenez related that she called Lopez-Sanchez a derogatory name and shut her door. Jimenez testified that she locked her door because she knew he would assault her. Lopez-Sanchez objected and argued Jimenez could not know what he was thinking. The trial court sustained the objection. Soon after, Jimenez testified that she would not let Lopez-Sanchez inside because she knew he would hit her. These comments, although arguably improper, are not evidence of prior assaults.

Here, unlike in *Escalona*, the State submitted objective evidence that corroborated Jimenez's version of events. The State introduced photos of Jimenez's destroyed door and of her injuries. The jury likely focused on this objective evidence rather than vague allusions of past behavior. We conclude that the trial court did not abuse its discretion when it denied Lopez-Sanchez's mistrial motion.

B.    REAL FACTS DOCTRINE

Lopez-Sanchez contends that the real facts doctrine was violated at sentencing. He argues that the terms of his sentence and no-contact order were improperly influenced by the prosecutor's claims that Lopez-Sanchez stared down Jimenez at trial, and that Jimenez was mostly concerned that an appropriate protective order be entered. We disagree with these arguments.

10

The real facts doctrine requires a defendant's sentence to be based on his current conviction, his criminal history, and the circumstances of the crime. *State v. Morreira*, 107 Wn. App. 450, 458, 27 P.3d 639 (2001) (quoting *State v. Coats*, 84 Wn. App. 623, 626, 929 P.2d 507 (1997)).

Here, the trial court did not base its sentence or the term of the no-contact order on any improper information. The trial court based Lopez-Sanchez's sentence on his criminal history and agreed with Lopez-Sanchez's request to sentence him to the lowest end of the standard range. The trial court based the term of the no-contact order on the State's request and the lack of any contrary request by Lopez-Sanchez. The trial court simply signed an order that was not opposed.

C.     SUFFICIENCY OF THE EVIDENCE

Lopez-Sanchez challenges the sufficiency of the evidence. He claims no evidence established he was present at Jimenez's home and the evidence did not establish his entry was unlawful for the burglary charge. We find his argument frivolous.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In evaluating the sufficiency of the evidence, the court must determine whether, when viewing the evidence in the light most

11

favorable to the State, any rational trier of fact could have found guilt beyond a

reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995). A claim of

insufficiency admits the truth of the State's evidence and all reasonable inferences from

that evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Reviewing

courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of

witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821,

874-75, 83 P.3d 970 (2004). This court does not reweigh the evidence and substitute its

judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)

(plurality opinion). For sufficiency of evidence claims, circumstantial and direct evidence

carry equal weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

> Burglary in the first degree is defined in RCW 9A.52.020(1) as follows:
>
> A person is guilty of burglary in the first degree if, with intent to commit a
> crime against a person or property therein, he or she enters or remains
> unlawfully in a building and if, in entering or while in the building or in
> immediate flight therefrom, the actor or another participant in the crime
> (a) is armed with a deadly weapon, or (b) assaults any person.

A person "enters or remains unlawfully" when they are "not then licensed, invited, or

otherwise privileged to so enter or remain." RCW 9A.52.010(2). The State must prove

the identity of a criminal defendant and his presence at the scene of the crime charged

12

No. 36058-0-III
*State v. Lopez-Sanchez*

beyond a reasonable doubt. *State v. Thomson*, 70 Wn. App. 200, 211, 852 P.2d 1104 (1993), *aff'd*, 123 Wn.2d 877, 872 P.2d 1097 (1994).

Under the proper standard of review, sufficient evidence established that Lopez-Sanchez went to Jimenez's apartment the day of the crimes. Jimenez testified that he was present. Although Lopez-Sanchez and his girlfriend testified that they were together all day, the jury was free to discount these testimonies. Similarly, Jimenez's testimony that Lopez-Sanchez broke down her locked door and beat her is sufficient alone to sustain the burglary conviction.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

13